HOWARD DAVID LOUK

*v.*

LLOYD E. HAYNES, *Warden, etc.*

(No. 13651)

Decided April 6, 1976.

*Robert M. Steptoe, Jr., Steptoe & Johnson,* for petitioner.

*Chauncey H. Browning,* Attorney General, *E. Leslie Hoffman, III, Fredric J. George,* Assistant Attorneys General, for respondent.

FLOWERS, JUSTICE:

Howard David Louk, the petitioner in this habeas corpus proceeding, was sentenced by the Circuit Court of Randolph County to serve a term of one to five years in the State penitentiary upon a plea of guilty to an indictment charging him with the sale of marijuana. His sentence was suspended and he was placed on probation subject to certain terms and conditions established by the circuit court. Probation was subsequently revoked by the circuit court and the petitioner was remanded to the custody of the respondent, Lloyd E. Haynes, Warden of the Huttonsville Correctional Center to serve the sentence previously imposed. The petitioner seeks relief from that custody on the ground that his sentence, probation and revocation of probation were effected by the circuit court in a manner which deprived him of his

right to due process of law. The Attorney General, counsel for the respondent, confesses error on the ground that the lack of a preliminary probable cause probation hearing constituted a denial of due process of law.

The numerous issues presented in this case necessitate a close review of the proceedings in the trial court to determine whether procedural guarantees mandated by due process were observed. A concise analysis of these issues establishes four major areas in which the actions of the trial court are subject to constitutional scrutiny: (1) The manner in which the plea was accepted and the sentence imposed; (2) the validity of the terms of probation and the manner in which they were established; (3) the procedural regularity of the revocation proceedings; and (4) the substantive basis upon which probation was revoked. The latter two areas are also subject to a determination of whether the trial judge lacked the judicial impartiality required by due process standards.

On January 21, 1975, the petitioner was indicted and charged with possession of marijuana with intent to deliver in violation of the Uniform Controlled Substances Act.[1] Subsequently he entered a plea of guilty and the court ordered preparation of a presentence investigation report.

On March 31, 1975, the petitioner appeared before the circuit court for sentencing. During the course of the hearing, the circuit court commented on the prior conduct of the petitioner, acknowledging receipt of information that the petitioner had been "shacking up at D & E College," and characterized the petitioner as "a hippie, a drug pusher." The circuit court inquired of the petitioner whether he was willing to abide by certain terms of probation, including attending church every Sunday, abstaining from "drinking" and "boozing," working two jobs a day commencing the next day, observing a 10 p.m. curfew, avoiding injurious and vicious habits and per-

---

[1]*W. Va. Code*, 60A-4-401, *as amended.*

sons and places of disreputable or harmful character, staying away from places serving alcoholic beverages with the exception of his father's tavern, staying away from college campuses and girls' dormitories, getting a haircut, and becoming a "16-hour-a-day [working] man for the next five years." The court also mentioned that Mr. Ray Louk, who was not otherwise identified except as living "up at Mill Creek," would serve as volunteer probation officer. The petitioner acknowledged a willingness to comply with these terms and stated that he had a job with a building contractor as soon as the ground "dries up a little bit." The probation officer verified that the contractor would employ Louk "immediately."

At the conclusion of the hearing, the petitioner was sentenced to a term of one to five years in the State penitentiary, but the execution of the sentence was suspended and the petitioner was placed on probation. He was further required to return to the court at 1:00 p.m. to prove compliance with the "haircut" order of the judge.

According to the petitioner's deposition, he attempted to get a haircut but all the barber shops were closed. He returned to the circuit court that afternoon and was instructed to return the next morning with a haircut and two jobs.

The following day the petitioner, without his counsel, and his father reported to the circuit judge. He had complied with the "haircut" requirement. He again advised the court that he had a job with a building contractor and a job in his father's restaurant. The judge was apparently dissatisfied with the nature of the employment. The petitioner stated that the judge thought working on a farm or cutting timber was the proper work for someone who needed "behavior modification."

At the suggestion of the trial judge, the petitioner contacted Mr. Herman Isner, who hired him to work on his farm. Although there is some dispute about the amount of wages the judge implied the petitioner would

be paid, he accepted the job for $20 a week and $5 extra for each Saturday he worked. His housing was to be furnished on the farm.

A final order establishing the terms of the probation was entered on April 4, 1975, *nunc pro tunc* for March 31, 1975. The terms set forth in the order required the petitioner to be of good behavior, avoid injurious or vicious habits, comply with the rules and regulations prescribed by the court and the Department of Probation and Parole (*sic*), seek gainful employment and work satisfactorily, appear and abide by the action of the court and to be at his usual place of abode by 11:00 p.m. each and every evening. Mr. J. Herman Isner was designated by the order as a volunteer probation counselor. The latter condition was manually interlined into the order as paragraph "11" after the order had been signed and approved by petitioner's counsel.

While it is not evident from the order or the record made at the sentencing, it is apparent that the judge made employment and residence on the Isner farm conditions of probation. Both Phares, the probation officer, and Isner testified that the petitioner was required to stay on the farm and work.

The petitioner moved into a small house on the Isner property, which petitioner and his father described as "dirty" and in "pretty bad shape." It took three days for the petitioner to get the house cleaned. It had a Burnside stove and no refrigerator. The petitioner cooked his meals on an electric hot plate. Phares described the house as adequate, but in need of repair.

While working on the farm, the petitioner performed a variety of functions. His work, according to his deposition, included replacement and repair of fence on grazing property leased by the judge, regular weekly feeding of cattle owned by the judge for a two-month period, and on one occasion separation of the judge's cattle from the Isner cattle. Isner admitted that the petitioner might

have fed the judge's cattle occasionally and did help separate his own cattle from those of the judge.

During the time the petitioner worked on the farm, he was visited on several occasions by his probation officer, Franklin D. Phares. On one of his visits with petitioner, Louk informed him that, after meeting his monthly payments on his debts, he did not have sufficient money to buy food and clothing. Phares made arrangements for Louk to purchase food stamps. On other occasions Louk expressed dissatisfaction with farm work and wanted to return to work as an automobile body repairman.

On June 9, 1975, after working on the farm for two months, the petitioner left and returned to his parents' home. His departure was precipitated by an argument with Isner concerning the petitioner's desire to work as a body repairman. He left Isner a note, indicating that he would turn himself in to his probation officer. The petitioner spent that night at his parents' home and surrendered himself to his probation officer the next day.

When Louk reported to his probation officer, he was arrested and remanded to jail on charges of violating the terms of his probation. He was confined in jail from June 10, 1975, until his hearing on July 15, 1975. During the period of incarceration he was orally informed of the charges pending against him. Written charges detailing the violations were filed with the court on July 7, 1975. The probation officer did not provide Louk with a copy of the written charges. The record reveals that on the day of the hearing counsel for Louk had not seen a copy of the written charges.

The petitioner was accused of having violated four established conditions of his probation; namely, that he had changed his place of employment without written permission, that he had changed his residence without written permission, that he failed to be at his residence by 11:00 p.m., and that he refused to work for Mr. Isner.

At the conclusion of the hearing on July 15, 1975, the circuit court ruled that the petitioner had violated the conditions of his probation, probation was revoked and the sentence of one to five years previously imposed was executed.

I

The petitioner initially prays that his plea of guilty, his conviction and sentence be set aside as void. We find no error in the arraignment or sentencing procedures which would justify such a result.

The petitioner was examined extensively on the record to ascertain that his plea was voluntarily and intelligently entered. As required by *Call v. McKenzie,* _____ W. Va. _____, 220 S.E.2d 665 (1975), the trial judge interrogated the petitioner at length with regard to his intelligent understanding of his rights, some of which he would waive by pleading guilty. The colloquy between the petitioner and the trial judge on the record affirmatively demonstrates that the plea was intelligently and voluntarily made. *See, Boykin v. Alabama,* 395 U.S. 238 (1969).

The relator entered his plea with the assistance of counsel and counsel was present when the sentence was imposed and subsequently suspended.

II

The second major issue in this proceeding is whether the petitioner was denied due process of law because his counsel was absent when certain probation terms were established and the terms were subsequently modified by the trial court in the absence of the petitioner and his counsel.

Essentially the trial court in this instance imposed three sets of conditions—(1) those which were announced in the presence of the petitioner and his counsel; (2) those which were established by the trial court in

an "off the record" conference with the petitioner; and (3) those which were incorporated in the final order.

Certain terms of probation, which never became a part of the final order, were discussed in open court on March 31, 1975. At that time, the petitioner was present with his counsel. We find no error in the failure of the order to reflect all the terms of which the record shows the petitioner had notice and of which he was apprised in the presence of counsel. Employment arrangements were made on a later occasion in the judge's chamber, however, in the absence of counsel.

It is apparent from a reading of the transcript of the revocation hearing that the trial judge had required as conditions of probation that the petitioner live and work on the Isner farm. According to the petitioner's testimony, the suggestion of this employment situation was first made during a conference with the judge after the sentencing procedures had been effected. Counsel was not present. Subsequently the petitioner was advised by the trial judge that he was to stay on the Isner farm and that his release would be determined at a later time.

At the revocation hearing, the judge interpreted his probation terms as a program involving:

> "... a stringent behavioral modification in that he would not be able to remain at his home, .... I was interested in getting Mr. Louk out of his home. He and his father were having conflicts and difficulties in the family residence."

The final order establishing the terms of probation included a provision appointing Herman Isner as a volunteer probation officer. This provision was inserted into the order in the absence of counsel and subsequent to the time that counsel had signed the order acknowledging his approval. The undisputed evidence indicates that the petitioner was never provided a copy of the final order or provided with notice that Isner was to serve as a volunteer probation officer. This might be

explained by the terms of the order which required it to be mailed to the defendant at his parents' address, a place which restriction to the Isner farm forbade him to be.

"A person indicted for felony shall be personally present during the trial therefor." *W. Va. Code*, 62-3-2. This statute has been interpreted as requiring the presence of the accused in person "from the inception of the trial on the indictment to the final judgment, when anything is done affecting him; and the record must show his presence." *State v. Vance*, 146 W. Va. 925, pt. 8 syl., 124 S.E.2d 252 (1962); *Dye v. Skeen*, 135 W. Va. 90, 62 S.E.2d 681 (1950); *State v. Martin*, 120 W. Va. 229, 197 S.E. 727 (1938).

The right to be personally present during the trial, which the statute safeguards to the accused, is an inalienable right. *State ex rel. Boner v. Boles*, 148 W. Va. 802, 137 S.E.2d 418 (1964). The statute mandatorily requires the protection of this right and its provisions must be strictly applied and enforced. *State v. Vance, supra.*

We have held, therefore, that the statute requires the presence of the accused when the sentence is announced and that the right to be present extends to and includes the right to be present when a modification or change of sentence is pronounced. *State ex rel. Boner v. Boles, supra.* This Court has previously held that the right to counsel does not attach to a deferred sentence proceeding when an accused is simply placed on probation, reasoning that probation is not a sentence for a crime but instead is an act of grace upon the part of the State to a person who has been convicted of a crime. *State ex rel. Render v. Wood*, 152 W. Va. 484, 165 S.E.2d 102 (1968). Today we expressly disapprove and overrule the first point of the syllabus and that portion of the decision in *Render* which is inconsistent with our holding herein. The accused must be furnished with the assistance of counsel and counsel must be present when the terms of probation are established or modified. The liberty of the accused is no less "affected" because probation is consid-

ered an act of grace. Due process cannot be denied a probationer by such reasoning. *Gagnon v. Scarpelli*, 411 U.S. 788, 782, note 4, (1973); *Dobbs v. Wallace*, _____ W. Va. _____, 201 S.E.2d 914, 917 (1974). Every condition of probation constitutes a restriction of liberty and violation of any condition may result in imprisonment.

Because probation is directly related to a deferred or suspended sentence and the liberty of the accused is contingent upon his compliance with the conditions of his probation, due process and the provisions of *Code* 62-3-2 mandate the presence of the accused when the terms of probation are established. For these same reasons the suspension of a sentence coupled with probation is a "critical stage" of the trial proceeding to which the right to counsel attaches. *See, Mempa v. Rhay*, 389 U.S. 128 (1967).

Viewing the terms of probation in this light, we are compelled to find that certain terms of probation established by the trial court were void as violative of procedural due process. To the extent that the terms of probation were announced and established in the presence of the petitioner and his counsel, we find them protected from attack. The final order to the extent that it is reflective of these announced conditions is equally protected from charges of invalidity. To the extent, however, that the conditions were established or modified by the trial court in the absence of the petitioner and his counsel, they are void as violative of procedural due process. The conditions, therefore, which required the petitioner to live and work on the Isner farm and the provision substituting J. Herman Isner as a voluntary probation officer, having been in the first instance established in the absence of counsel and in the second instance modified in the absence of the petitioner and his counsel, are void and unenforceable.

We do not intend by this opinion to contradict in any manner our decision in *State v. Davis*, 153 W. Va. 742, 172 S.E.2d 569 (1970), wherein we held that *W. Va. Code*,

62-3-2, did not mandate the presence of the accused when the orders are signed; nor do we interpret the statute as requiring the presence of the accused when an order is amended or modified for correction of clerical errors. Our decision is predicated solely upon the principle that the accused and his counsel must be present when the conditions of probation are set or modified by the trial court.

The petitioner further contends that requiring him to live and work on the Isner farm constituted an abuse of discretion by the trial court. We agree.

*W. Va. Code*, 62-12-9, *as amended*, provides:

"Release on probation shall be upon the following conditions:

(1) That the probationer shall not, during the term of his probation, violate any criminal law of this or any other state, or of the United States.

(2) That he shall not, during the term of his probation, leave the State without the consent of the court which placed him on probation.

(3) That he shall comply with the rules and regulations prescribed by the court or by the board of probation and parole, as the case may be, for his supervision by the probation officer.

In addition, the court may impose, subject to modification at any time, any other conditions which it may deem advisable, including but not limited to any of the following:

(1) That he shall make restitution or reparation, in whole or in part, immediately or within the period of probation, to any party injured by the crime for which he has been convicted.

(2) That he shall pay any fine assessed and the costs of the proceeding in such installments as the court may direct.

(3) That he shall make contribution from his earnings, in such sums as the court may direct, for the support of his dependents."

The statute imposes certain mandatory conditions of probation and permits the trial judge in his discretion to impose additional conditions which may include but are not limited by those conditions designated in the statute as discretionary. Any conditions of probation, however, which is imposed in the discretion of the trial court must be reasonable. 24 C.J.S. *Criminal Law* § 1571(8), p. 471. The effect of the requirement to live and work on a specified farm in the instant case was to sentence the petitioner to a period of confinement for an indefinite time at a task for which he was neither qualified nor suited by training or experience. We believe that it is beyond the purview of the trial judge's authority to require any probationer to work at a specific place of employment. To do so permits a trial judge, under the guise of probation, to confine a convicted offender for a period of involuntary servitude. A convicted offender may be confined in the penitentiary or, in certain circumstances as provided by statute, to other county and state penal or rehabilitative institutions, but the confinement authority of the trial judge is limited to such facilities. We do not here imply that prohibiting certain employment during the term of probation is beyond the authority of the trial judge. Indeed, it may be entirely proper, considering the nature of the crime, to isolate and insulate the defendant from certain temptations.

## III

The petitioner contends he was denied the minimal procedural protections of due process with reference to the probation revocation proceedings. The Attorney General confesses error on this issue because no preliminary probable cause violation hearing was held.

On June 10, 1975, the day after he left the Isner farm, the petitioner reported to his probation officer, Phares, and was remanded to jail on charges of probation violation. A full hearing on the charges was accorded petitioner on July 15, 1975. During this period of incarceration he was orally apprised of the nature of the charges

by his probation officer. It was admitted that no written notice of the charges was ever afforded the petitioner. After the single hearing, which took place over a month after arrest, the petitioner's sentence was executed and he was remanded to the custody of the warden of the Huttonsville Correctional Center to serve the indeterminate sentence of one to five years previously imposed.

*W. Va. Code*, 62-12-10, *as amended*, provides in part:

> "If at any time during the period of probation there shall be reasonable cause to believe that the probationer has violated any of the conditions of his probation, the probation officer may arrest him with or without an order or warrant, or the court which placed him on probation, or the judge thereof in vacation, may issue an order for his arrest, whereupon he shall be brought before the court, or the judge thereof in vacation, for a prompt and summary hearing."

This statute provides for a single "summary hearing" and affords an accused no other procedural protections. The United States Supreme Court, however, has held that due process mandates that ". . . a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey v. Brewer, supra* [408 U.S. 471 (1972)]." *Gagnon v. Scarpelli, supra* at 782. To the extent, therefore that *W. Va. Code* 62-12-10 *as amended*, fails to require a preliminary probable cause violation hearing, it is violative of the due process clause of the Fourteenth Amendment of the Constitution of the United States.

The preliminary hearing as defined under the *Morrissey* and *Gagnon* decisions is a hearing held at the time of arrest and detention to determine whether there is probable cause to believe that the accused has committed a violation of his probation or parole. The hearing must be held by an independent officer as promptly as convenient after arrest, while information is still fresh and sources are available. *Morrissey v. Brewer, supra,* at 485–86.

We note at this juncture, as did the Court in *Morrissey*, that the independent officer need not be a judicial officer. A proper hearing may be held before a probation or parole officer, other than the one who has made the report of violations or who has recommended revocation. We feel compelled to suggest, however, that the most logical "independent officer" would be a county magistrate.

The subsequent hearing is a more detailed one because the ultimate decision there is whether to revoke probation rather than merely determining the existence of probable cause for revocation. *Gagnon v. Scarpelli, supra* at 786. The final revocation proceeding required under *Morrissey* and *Gagnon* and necessitated by statute in this state must accord an accused with the requisite minimal procedural protections outlined in *Morrissey*. The minimum requirements of due process include:

> " '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact-finders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer, supra*, at 489." *Gagnon v. Scarpelli, supra* at 786.

We find, therefore, that the revocation proceeding in the instant case was constitutionally defective because no written notice of charges was given the petitioner and because he was not afforded a preliminary hearing before an independent hearing officer.

The error relating to the lack of a preliminary hearing, which was here confessed by the Attorney General, therefore, has a valid basis in fact and in law and neces-

sitates a reversal of the revocation proceeding in its entirety. In a habeas corpus proceeding where the state confesses error and urges that the petitioner be granted relief from the erroneous action of a trial court, upon ascertaining that the errors confessed are reversible errors and do in fact constitute cause for vitiating certain acts taken by a trial court, this Court will grant such relief in habeas corpus as is necessary to spare the petitioner from the erroneous acts. *See, State v. Goff,* _____ W. Va. _____, 221 S.E.2d 891 (1976).

## IV

The record demonstrates in this proceeding that the trial judge lacked the requisite neutrality which constitutes a basic requirement of due process.

From the record it is apparent that the trial judge initially was reluctant to place the petitioner on probation. He made a great effort to impress the petitioner with the fact that he had "never granted probation to any drug pusher." In retrospect he described his probation terms as necessitated by the petitioner's need for "a stringent behavioral modification."

The trial judge subsequently questioned and regretted his decision to grant probation in a drug case. He stated again at the revocation hearing that it was the first time he had "granted probation to a drug pusher" and that he "set the conditions out very stringently." He lamented: "It's unfortunate that I granted probation to a drug pusher, and the first one that I granted probation to has difficulties." Another place he stated, "In fact, I must have been conned from the bench, . . . ."

Moreover, the judge seemed to fear that his familial relationship to the defendant might have influenced his initial decision. He stated at the revocation hearing:

"The two or three things that I want to bring out on the record in this matter is the fact that I went overboard, I felt, as a trial judge because it could be—Well, I think possibly this young man that is sitting before me might be maybe a third

or fourth cousin. I didn't realize that until the day after or the day, I believe, Mr. Brown, that I imposed sentence."

Mr. J. Herman Isner was admittedly related at least distantly to the trial judge. The evidence reflects that on several occasions Louk was called upon by Isner to do work which benefitted the trial judge who kept his cattle in an adjacent pasture. According to the petitioner's testimony, the trial judge called on him at 7:00 a.m. on a Sunday morning and told him to "Get dressed. We are going to work." The judge, his son and Louk then spent the day repairing fence on the Isner property and the adjacent property, which the judge rented.

Due process requires that the appearance of justice be satisfied. The United States Supreme Court has stated:

> "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that 'every procedure which would offer a *possible temptation* to the average man as a judge ... not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law.' *Tumey v. Ohio*, 273 U.S. 510, 532. Such a stringent rule may sometimes bar trial by judges who have *no actual bias* and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14." *In Re Murchison*, 349 U.S. 133, 136, (1955). (emphasis added.)

We find, therefore, that under the facts and circumstances of this case, the petitioner was also denied due process of law because of the failure of the trial judge to recuse himself. The record reflects that the trial judge was so enmeshed in matters involving the petitioner as to make it appropriate for another judge to sit. We do not hold that every sentencing judge is per se ineligible from hearing and deciding an issue of probation revocation. Where, however, a challenge to a judge's impartiality is made for substantial reasons which indicate that the circumstances offer a possible temptation to the average man as a judge not to hold the balance nice, clear and true between the State and the accused, a judge should recuse himself.

## V

Finally, we must consider whether probation should have been revoked in this instance. The petitioner was charged with four violations: (1) changing his place of employment without written permission; (2) changing his place of residence without written permission; (3) failing to be at his residence by 11:00 p.m.; and (4) refusing to work for Mr. Isner. The first two violations arise from failure to comply with the rules and regulations of the Board of Probation and Parole imposed as a condition of probation by the judge pursuant to *W. Va. Code,* 62-12-9, *as amended.* The last two violations arise from failure to observe conditions established by the court.

Revocation in this instance was improper because it was predicated entirely upon a violation of conditions which were void. All four violations resulted from the petitioner's failure to observe the conditions that he live and work on the Isner farm—conditions we have held void as violative of due proces and constituting an abuse of discretion. The curfew was violated only at the farm residence and no evidence indicated that the petitioner violated the 11 p.m. curfew in his parents' home, his principal place of abode prior to the imposition of the void Isner farm residence condition.

We are further compelled to reach this conclusion by reason of the trial court having heard and considered adverse evidence extrinsic to the violations upon which the petitioner was charged. The trial court received evidence that the petitioner entertained a girlfriend on the Isner premises, which Mr. Isner felt was "morally wrong," and considered matters contained in the presentence investigation report and other factual circumstances surrounding the defendant's inability to find work prior to the initial sentencing. The *Morrissey* and *Gagnon* decisions provide for informal hearings, and mandate that certain due process guarantees be afforded an accused. These informal hearings are not in the nature of a structured trial proceeding, but evidence must be confined to relevant testimony concerning written charges of which the accused has notice. *See, Edwardsen v. Gray*, 352 F. Supp. 839 (E.D. Wis. 1972).

For the reasons stated in this opinion, the Honorable George R. Triplett, Judge, is ordered to recuse himself from further participation in the matter and the respondent warden is ordered to deliver forthwith the relator before the Circuit Court of Randolph County for the express purpose of reinstating relator to his period of probation under such reasonable terms and conditions as shall be established by a judge to be designated by the Chief Justice of this Court and to conduct such further proceedings as are necessary for the disposition of this case.

*Writ awarded.*