331 So.2d 313 (1976)
STATE of Florida, Petitioner,
v.
Eartha Lee GRIFFITH, Respondent.
No. 47137.
Supreme Court of Florida.
April 14, 1976.
Robert L. Shevin, Atty. Gen., and Stephen R. Koons, Asst. Atty. Gen., for petitioner.
Richard L. Jorandby, Public Defender, and Richard S. Power, Asst. Public Defender, for respondent.
SUNDBERG, Justice.
We review by certiorari a decision of the Fourth District Court of Appeal, reported at 309 So.2d 252.
Respondent Eartha Lee Griffith entered a plea of guilty to a charge of second degree murder in the Circuit Court in and for Orange County on May 25, 1972. Adjudication of guilt and imposition of sentence were withheld, and she was placed on probation for a period of ten years.
In August, 1973, an affidavit of violation of probation was taken before the Circuit Court for Orange County and an arrest warrant was issued for the respondent. The affiant, Griffith's probation officer, charged that respondent had violated three conditions of her probation: (1) she had been unemployed for nearly twelve months; (2) she had failed to follow instructions from the affiant that she appear on several *314 occasions at the probation supervisor's office and also she had failed on several occasions to submit a daily list of three prospective employers; and (3) she had fallen behind in paying court costs and fees related to her defense to the murder charge. Griffith was taken into custody on August 9, 1973, upon the warrant supported by affidavit and was arraigned the following day. After hearing, an order of revocation was entered on October 25, 1973, and Griffith was thereafter found guilty of murder in the second degree and duly sentenced.
Contending that Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), required a preliminary hearing before a second hearing at which probation was revoked, respondent appealed to the Fourth District Court of Appeal. With one judge dissenting, that court reversed the order of probation revocation and stated, "This constitutes a denial of due process with the consequence being that appellant's probation must be reinstated." The dissenting opinion argued that the majority's decision conflicted with the earlier pronouncement of that District Court of Appeal in Singletary v. State, 290 So.2d 116 (4th D.C.A.Fla. 1974), cert. dismissed, 293 So.2d 361 (Fla. 1974). It was through that conflict of decisions that the jurisdiction of this Court was invoked. Art. V, § 3(b)(3), Fla. Const.
In Singletary, supra, the court set out the various methods by which probationers may be arrested and detained for revocation hearings:
"In Florida there are three separate procedures for arresting and holding a probationer as prelude to a probation revocation hearing. First, F.S. Section 948.06, F.S.A., authorizes any probation supervisor, upon reasonable ground to believe a violation has occurred, to arrest a probationer without a warrant, and forthwith return him to the court granting probation. This is rarely, if ever, done. The second and most usual way that revocation proceedings are commenced in Florida is by an affidavit being presented to a committing magistrate, who, after finding from it and other proof presented, that there is reasonable ground to believe the probationer has violated his probation in a material respect, issues a special arrest warrant. The judge issuing the warrant can endorse thereon the amount of bail, if any. The probationer, when arrested, is either taken forthwith before the court granting such probation, to whom the warrant is returnable, or, pursuant to RCrP Rule 3.130(b)(1), 33 F.S.A., he is taken before a judical officer, a County Judge, within 24 hours of his arrest, for a First Appearance hearing where the County Judge, as magistrate, immediately informs him of the nature and cause of the accusation against him and provides him with a copy thereof [RCrP Rule 3.130(b)(2)]. He is advised of his right against self-incrimination, and that means will be provided for him to communicate with his counsel, his family, or his friends. Counsel is then appointed for him if he desires, but is financially unable to afford, counsel. In some judicial circuits, the the magistrate considers admitting the accused probationer to bail or releasing him on his own recognizance, while in other circuits, if the probation was granted in the Circuit Court, the County Judge does not set bail but forthwith binds the accused over for further proceedings before `the court granting such probation', where the Circuit Judge, as arraignment procedure, again advises the accused of the charge and advises him he is entitled `to be fully heard on his own behalf in person or by counsel.' If the violation is not admitted, the Circuit Judge considers releasing him from confinement with or without bail and sets a final hearing `as soon as may be practicable'. A third probation violation procedure was provided by the passage in 1972 of F.S. Section 949.10-949.12, F.S.A., which provides for an automatic bailess temporary *315 revocation when a person on probation as to a felony is arrested on a subsequent felony charge. The statute specifically requires a revocation hearing within 10 days, otherwise the probationer is immediately released from incarceration on the temporary revocation."
(Footnotes omitted)
Eartha Griffith was detained under the usual affidavit-judicial warrant procedure described above. She argued successfully before the District Court of Appeal that this procedure violates minimal constitutional standards for revocation hearings imposed by Morrissey and Gagnon, supra. In these two landmark cases, the United States Supreme Court found the procedures by which Iowa revoked parole (Morrissey) and Wisconsin revoked probation (Gagnon) to be constitutionally deficient. Neither state had laws requiring any hearing before probationary status was removed, let alone an initial informal hearing to determine the existence of probable cause to believe the parolee or probationer had violated his agreement with the state. It is this minimal preliminary hearing which these decisions found necessary to bring the Iowa and Wisconsin procedures up to constitutional standards. Such a hearing may be held before any "neutral and detached" board or official other than the individual recommending probation. Morrissey, supra.
We believe that the Florida procedure as exercised in the instant case provides sufficient due process safeguards to render unnecessary an additional preliminary hearing. Eartha Griffith's probation officer executed an affidavit and jurat detailing the probationary conditions which she believed had been violated; a warrant was issued by a "neutral and detached" magistrate, a circuit judge; Griffith was arrested and arraigned before a judicial officer; and a revocation hearing was held at which respondent was represented by counsel and permitted to call and cross-examine witnesses. At no time did Griffith demand a preliminary hearing. It is difficult to discern how her rights were prejudiced by failure to give her such a hearing. In fact, near the end of the revocation hearing, the circuit judge commented:
"This Court has spent more time in dealing with the probation of this woman, the prospective probation and this violation, than in all of the other sentencings of all the other criminal defendants that I have ever dealt with... ."
We expressly adopt the holding of Singletary, supra, from which the District Court of Appeal erroneously departed in the instant case:
"Morrissey and Gagnon prescribe a minimal constitutional due process hearing for states that require no hearing before parole and probation is revoked and do not relate to Florida, which is recognized in Morrissey, Footnote 15, as being one of thirty states requiring hearings before revocation. Florida in arresting a probationer upon warrant issued by a judicial officer upon probable cause, supported by affidavit, has adopted a procedure similar to that provided by both the state and federal constitutions for the search and seizure and arrest of free unrestricted citizens. A probationer cannot be entitled to more. We hold that Florida's usual judicial warrant procedure is constitutionally equal or superior to the first `minimal inquiry' promulgated in Morrissey. Both are safeguards against the probationer being arbitrarily and unfairly deprived of his conditional liberty by arrest on unverified facts and confinement pending a revocation hearing. The court in Morrissey insisted it had no thought to create a formal or inflexible structure for revocation procedures." (Footnote omitted)
We are not unmindful that respondent spent 78 days in jail between the time of her arrest and the date of her probation revocation hearing. Rule 3.131(b), Fla.R. Cr.P., establishes the right to an adversary preliminary hearing if no formal charge *316 has been made within 21 days of the arrest, and respondent contends that incarcerated probationers should have an identical right. See In re Florida Rules of Criminal Procedure, 309 So.2d 544 (Fla. 1975). But even if this proposition were accepted as true, there is no showing that Griffith asked for such a hearing. What respondent seems to be arguing for is a speedy trial rule in revocation proceedings rather than the existence of a specific deficiency in current preliminary hearing procedures. Oaks v. Wainwright, 305 So.2d 1 (Fla. 1974), is cited as authority in this regard. In Oaks, this Court held that there should have been a preliminary hearing when the revocation hearing occurred more than two months after the petitioner's arrest. However, that case involved a parole revocation, in which the arrest warrant was issued by the Parole and Probation Commission without the intervention of any judicial officer, and thus Morrissey's strictures must apply. Like Morrissey and Scarpelli (who, in accordance with Wisconsin's probationary practice, had been sentenced to prison before the sentence was suspended conditional upon his compliance with probation conditions as determined by an administrative board), Oaks had, of course, been sentenced. In Florida, the trial judge does not pronounce and impose a sentence of imprisonment upon a defendant who is to be placed on probation,[1] except in the special county jail split-sentence procedure described in Section 948.01 (4), Florida Statutes.
In the instant case, as in Singletary, the warrant was issued by a "neutral and detached" magistrate, and so the problem of the same body's both determining the existence of probable cause and prosecuting thereon does not arise. Furthermore, the conclusion of this Court in Oaks that the petitioner's due process rights were violated was based at least in part on a 101-day delay in the State's return to Oaks' petition for writ of habeas corpus, a circumstance which we do not find sub judice.
The United States Supreme Court has recently held that, while a person arrested without a warrent is entitled to a timely judicial determination of probable cause, such cause for arrest may be determined without an adversary hearing and on the basis of hearsay and written testimony. Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Surely the constitutional standard can be no higher for one who, like respondent, is a probationer arrested by the requisite warrant.
Accordingly, the writ of certiorari is granted and the decision of the District Court of Appeal is quashed with directions to remand the cause to the trial court for reinstatement of the judgment and sentence of that court.
ADKINS, Acting C.J., and ENGLAND, J., and TYRIE A. BOYER, District Judge, concur.
HATCHETT, J., dissents.
NOTES
[1] Fla.R.Cr.P. 3.790(a).