STATE OF WEST VIRGINIA

*v.*

STEPHEN COOPER

(No. 14445)

Decided July 7, 1981.

*Chauncey H. Browning,* Attorney General, *Richard S. Glaser, Jr.,* Assistant Attorney General, for defendant in error.

*Goodwin & Goodwin* and *Michael I. Spiker* for plaintiffs in error.

MILLER, JUSTICE:

Stephen Cooper appeals from an order of the Circuit Court of Jackson County revoking his probation. The

appellant alleges that his probation should not have been revoked on the ground that he possessed and delivered marijuana for several reasons including his claim that he had been entrapped into committing the crime. Furthermore, he contends that the revocation based on the ground that he failed to pay his court costs was legally impermissible because of his indigency. Finally, he alleges that the trial court erred by revoking his probation without giving him credit for the time spent on probation. We believe that the trial court was correct in revoking the appellant's probation and therefore decline to reverse the circuit court's order.

In July of 1976, the appellant, who was 17 years old, pleaded guilty to grand larceny in Jackson County and was sentenced under our Youthful Male Offender Act, W. Va. Code, 25-4-6, to six months to two years at the Leckie Training Center. After spending approximately six months at Leckie, the appellant was released on probation for two years by the Circuit Court of Jackson County on May 20, 1977.

On December 9, 1977, the appellant's probation officer filed a notice of probation revocation alleging that the appellant had violated the terms of probation in three respects: (1) while in Ripley, West Virginia, he had possessed and delivered marijuana; (2) he had failed to remain employed; and (3) he had not made monthly payments to cover his court costs.

A preliminary revocation hearing on these issues was held before a magistrate at which time the State only introduced evidence concerning the appellant's failure to remain employed and to pay court costs. The State did not introduce evidence of the alleged marijuana transaction because the marijuana had not yet been sent to the State Police Laboratory in South Charleston for analysis. The defendant made a motion to dismiss the charge concerning the possession and delivery of marijuana because the State had not produced evidence concerning that transaction at the preliminary revocation hearing. This motion was apparently not ruled upon by the magistrate. Instead, the magistrate found probable cause to believe that the

appellant had violated the conditions of his probation. He was released on bond pending a final revocation hearing.

At the final revocation hearing, the State introduced extensive evidence concerning Cooper's violations of probation. Most of the State's case regarding the appellant's possession and delivery of marijuana was developed by the State's witness, Tom Hannum. It appears that around December 1, 1977, Hannum was arrested in Jackson County for petit larceny. During a custodial interrogation, the State Police asked Hannum if he knew of anyone selling marijuana in the Ripley area. Hannum identified the appellant as a person from whom marijuana could be purchased. The police equipped Hannum with a concealed tape recorder and some money and advised him to purchase some marijuana from the appellant. The next day Hannum followed the appellant and eventually asked him if he had any marijuana to sell. The appellant initially stated he did not have any marijuana but later in the conversation he told Hannum that he could get some. Hannum gave the appellant a marked twenty dollar bill.

After receiving the money, the appellant left and later returned to deliver the marijuana to Hannum, which Hannum then turned over to the police. The trial judge, after considering the testimony of Hannum and the involved police officers, found that the appellant had violated the conditions of his probation and entered an order revoking his probation and reinstating his sentence of one to ten years.[1]

The appellant now complains about his probation revocation based on possessing and transferring marijuana for three reasons: first, since the State failed to present evidence of the marijuana transaction at the preliminary revocation hearing, no evidence of that charge

---

[1] W. Va. Code, 25-4-6, provides that where a person has been placed on probation under the Youthful Male Offender Act and "his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation." In this case, his original conviction of grand larceny would have carried a sentence of one to ten years.

should have been allowed at the final revocation hearing; second, since the appellant was not convicted of possessing or transferring marijuana before his probation was revoked, he should not have been subjected to a revocation proceeding; and, third, the court erred in not finding the appellant entrapped as a matter of law.

We discussed in some detail a probationer's rights at a preliminary revocation hearing in *Louk v. Haynes*, 159 W. Va. 482, 223 S.E.2d 780 (1976). Our holding in *Louk* was based primarily on two Supreme Court cases, *Gagnon v. Scarpelli*, 441 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In those cases, the Supreme Court found that probation and parole could not be revoked without adequate procedural safeguards, namely, a preliminary and final hearing. In *Louk* we discussed the fundamental purpose of the preliminary revocation hearing:

> "The preliminary hearing as defined under the *Morrissey* and *Gagnon* decisions is a hearing held at the time of arrest and detention to determine whether there is probable cause to believe that the accused has committed a violation of his probation or parole. The hearing must be held by an independent officer as promptly as convenient after arrest, while information is still fresh and sources are available.[2] *Morrissey v. Brewer, supra,* 408 U.S. at 485-86, 92 S.Ct. 2593." 223 S.E.2d at 789.

In this case, the appellant challenges the adequacy of his preliminary revocation hearing since no evidence of the marijuana transfer was introduced. He argues that the failure of the State to present evidence amounts to a *de facto* dismissal of this ground.

The procedural details of a preliminary probation revocation hearing have not been extensively discussed by the courts nor have they been addressed by commenta-

---

[2] The exact language in *Gagnon* is:

"[A] preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his [probation]." 411 U.S. at 782-83, 36 L.Ed.2d at 661, 93 S.Ct. at 1759.

tors.[3] The United States Supreme Court in note 22 of *Gerstein v. Pugh*, 420 U.S. 103, 122, 43 L.Ed.2d 54, 70, 95 S.Ct. 854, 867 (1975), has made this distinction between a probation revocation preliminary hearing and a criminal probable cause hearing for arrest purposes:

> "In Morrissey v Brewer, 408 US 471, 33 L Ed 2d 484, 92 S Ct 2593 (1972), and Gagnon v Scarpelli, 411 US 778, 36 L Ed 2d 656, 93 S Ct 1756 (1973), we held that a parolee or probationer arrested prior to revocation is entitled to an informal preliminary hearing at the place of arrest, with some provision for live testimony. 408 US, at 487, 33 L Ed 2d 484; 411 US, at 786, 36 L Ed 2d 656. That preliminary hearing, more than the probable cause determination required by the Fourth Amendment, serves the purpose of gathering and preserving live testimony, since the final revocation hearing frequently is held at some distance from the place where the violation occurred. 408 US, at 485, 33 L Ed 2d 484, 411 US, at 782-783, n 5, 36 L Ed 2d 656. Moreover, revocation proceedings may offer less protection from initial error than the more formal criminal process, where violations are defined by statute and the prosecutor has a professional duty not to charge a suspect with crime unless he is satisfied of probable cause."

In view of this statement, we believe that a preliminary revocation hearing is attended with somewhat more procedural formality than a criminal probable cause hearing. However, it does not reach the strict procedural requirements of a criminal trial.

---

[3] Most commentators address the due process considerations and leave untouched the detailed procedural questions surrounding a preliminary revocation hearing. Note *"Catch 22": A Probationer's And Parolee's Choice Between the Right to be Heard and the Privilege Against Self-Incrimination,* 9 Pac. Law J. 949 (1978); Van Zile, *Problems with Probation Revocation in Michigan: Emerging Implications of Gagnon v. Scarpelli,* 1976 Det. College of L. Rev. 533; Tobriner and Cohen, *How Much Process is "Due"? Parolees and Prisoners,* 25 Hastings L. J. 801 (1974); Fisher, *Parole and Probation Revocation Procedures After Morrissey and Gagnon,* 65 J. of Crim. L. and Criminology 46 (1974).

In the present case, the probation revocation notice charged the appellant with several probation violations, one of which was the marijuana charge. At the preliminary revocation hearing, probable cause was found on all charges other than the marijuana charge. The marijuana charge was not presented at the preliminary revocation hearing because the marijuana was not yet tested at the State Police Laboratory in South Charleston. We do not have a record of what occurred at the preliminary revocation hearing. The record does demonstrate, however, that two days after the preliminary revocation hearing, the Prosecuting Attorney filed a written statement of disclosure which set out in some detail the facts surrounding the marijuana charge including the names of the involved witnesses. At the final revocation hearing, the trial court rejected the appellant's motion to dismiss this ground and permitted this charge to be considered.

We conclude, under the facts of this case, that it was not reversible error for the trial court to consider the marijuana charge at the final revocation hearing because: (1) the initial notice of revocation contained the charge; (2) the State had a bona fide explanation for its inability to deal with the charge at the preliminary revocation hearing; (3) there were other charges on which probable cause was found which warranted detaining the appellant and proceeding to a full hearing;[4] and (4) the State by filing its disclosure statement prior to the final revocation hearing supplied the appellant with the evidence it had surrounding the marijuana charge. This put the appellant on substantially the same parity before the final revocation hearing as he would have been had the evidence on the marijuana charge been produced at the preliminary revocation hearing.

In sanctioning the procedure in this case, we do not wish to infer that the State can routinely bypass presenting

---

[4] In this connection, we make some analogy to our recent case of *State v. Ketchum*, ____ W. Va. ____, 289 S.E.2d 657 (1981), where we found that a final probation revocation would be sustained where there is one valid charge proven, even though other charges were not sustainable.

evidence as to one or more charges at a preliminary revocation hearing and then use these revocation grounds at the final revocation hearing. We sanction the rule in this case only because the State acted in a bona fide fashion and made a substantial effort to correct the deficiency through its written disclosure statement.[5]

The appellant also argues that his probation should not be revoked until he had been criminally convicted on the marijuana offense. We have already answered this question in Syllabus Point 3 of *Sigman v. Whyte,* 165 W. Va. 356, 268 S.E.2d 603 (1980):

> "The State may proceed with a probation revocation proceeding based upon commission of another crime without first obtaining a final disposition of that crime."

In *State v. Ketchum,* ____ W. Va. ____, 289 S.E.2d 657, (1981), we spoke to the underlying rationale behind this rule:

> "The reason probation can be revoked without an underlying conviction is because a probation revocation proceeding does not involve a determination of the defendant's guilt of the criminal offense committed while on probation. Rather it involves a factual determination that an offense has been committed which imparts the conclusion that the rehabilitative and other purposes behind probation have failed." (footnote omitted) Slip Op. p. 3.

---

[5] In *State v. Fraley,* 163 W. Va. 542, 258 S.E.2d 129 (1979), we concluded that the adding of additional charges to those contained in the original revocation petition was not reversible error where the probationer was given adequate notice and time to meet the charges at the final hearing. In a number of jurisdictions, courts have overlooked without any extended discussion procedural flaws at a preliminary revocation hearing on the theory that the final revocation hearing was fairly conducted under *Gagnon* due process standards. *E.g., State v. Moreno,* 21 Ariz. App. 462, 520 P.2d 1139 (1974); *People v. Andre,* 37 Cal. App. 3d 516, 112 Cal. Rptr. 438 (1974); *State v. Griffith,* 331 So.2d 313 (Fla. 1976); *People v. Gladdis,* 77 Mich. App. 91, 257 N.W.2d 749 (1977); *Commonwealth v. Perry,* 254 Pa. Super. 48, 385 A.2d 518 (1978); *State v. DeLomba,* 117 R.I. 673, 370 A.2d 1273 (1977).

The appellant's final argument on this ground is that the court should have found that he had been entrapped into committing the marijuana offense. We recognize, as have other courts, that a defendant may raise the defense of entrapment at a probation revocation proceeding. *E.g.*, *United States v. Sutton*, 421 F.2d 1394 (5th Cir. 1970); *People v. Schultz*, 254 Cal. App.2d 876, 63 Cal. Rptr. 667 (1967); *State ex rel. Parole & Probation Commission v. Helton*, 313 So.2d 413 (Fla. App. 1975); *Robert v. State*, 613 S.W.2d 291 (Tex. App. 1981). Our law on the entrapment defense is summarized in Syllabus Point 3 of *State v. Basham*, 159 W. Va. 404, 223 S.E.2d 53 (1976):

> "Entrapment, as a defense to criminal prosecution, occurs where the design or inspiration for the offense originates with law enforcement officers who procure its commission by an accused who would not have otherwise perpetrated it except for the instigation or inducement by the law enforcement officers."

*See also* Syllabus Point 1, *State ex rel. Paxton v. Johnson*, 161 W. Va. 763, 245 S.E.2d 843 (1978); *State v. Knight*, 159 W. Va. 924, 230 S.E.2d 732 (1976).

Here, the trial court sitting as the fact finder, without a jury, heard the evidence and concluded that the entrapment defense could not be sustained from a factual standpoint. We believe the trial court was correct and refuse to reverse its decision as a matter of law. The evidence does not show that the police, through its agent Hannum, were directing and controlling the appellant's conduct in such an unconscionable way that the crime was created by the police. This is the summary of the test for finding entrapment as a matter of law, which was formulated in *State v. Knight, supra*:

> "However, if the evidence establishes, to such an extent that the minds of reasonable men could not differ, that the officer or agent conceived the plan and procured or directed its execution in such an unconscionable way that he could only be said to have created a crime for the purpose of making an arrest and obtaining a conviction, then the

question is one for the court to resolve without the necessity of submitting the matter to the jury." 159 W. Va. at 924, 230 S.E.2d at 737.

In this case, the appellant had been approached by Hannum to sell marijuana, he agreed to do so and took the money offered. The appellant left Hannum and returned about 30 minutes later, then they both walked to the basement of the courthouse in Jackson County where appellant delivered the marijuana. This evidence reveals no unconscionable coercive conduct by the police or its agent.

A further issue raised by the appellant is that probation should not be revoked on the ground that he did not pay the court costs from his original criminal trial. The repayment of the court costs was a condition of his probation and he had been permitted to pay them on monthly installments. Since we have already found one valid ground to support his probation revocation, we need not determine whether this ground standing alone would support a probation revocation.[6] In Syllabus Point 3 of *State v. Ketchum, supra,* we stated:

"Where probation is revoked on one valid charge, the fact that other charges may be invalid will not preclude upholding the revocation."

As a final point the appellant claims that he should be entitled to credit for the time he spent on probation. In *Jett v. Leverette,* 162 W. Va. 140, 247 S.E.2d 469 (1978), we held that a probationer, after his probation was revoked, could

---

[6] We doubt probation revocation could be based solely on the failure to pay costs where the probationer is indigent. *Cf. Fuller v. Oregon,* 417 U.S. 40, 40 L.Ed.2d 642, 94 S.Ct. 2116 (1974). Most courts after *Fuller* have read their criminal costs statute (analogous to our W. Va. Code, 62-5-7) in light of a general statute relieving indigents from the payment of costs. *See* W. Va. Code, 59-2-1 and 59-1-36. This is done in order to avoid the equal protection problem discussed in *Fuller* and other Supreme Court cases cited in *Fuller. E.g., Peterson v. State,* 384 So.2d 965 (Fla. App. 1980); *White Eagle v. State,* 280 N.W.2d 659 (S.D. 1979); *Basaldua v. State,* 558 S.W.2d 2 (Tex. App. 1977); *State v. Barklind,* 87 Wash.2d 814, 557 P.2d 314 (1976); *People v. Lemon,* 80 Mich. App. 737, 265 N.W.2d 31 (1978); *People v. Bullard,* 52 Ill. App.3d 712, 367 N.E.2d 1017 (1977).

not obtain credit on his underlying sentence for the time spent on probation. Appellant distinguishes *Jett* by pointing to the fact that in this case he initially served six months on his sentence at the Leckie Center before he was placed on probation. He, therefore, argues that his situation is more like a parolee and that we should apply the rule in *Conner v. Griffith,* 160 W. Va. 680, 238 S.E.2d 529 (1977), which allows credit spent for time on parole.

The basic distinction between parole and probation, as we pointed out in *Jett,* is that the term of probation "has no correlation to the underlying criminal sentence, while parole is directly tied to it. In effect, there is a probation sentence which operates independently of the criminal sentence." Syllabus Point 1, in part, *Jett v. Leverette, supra.* Other differences between probation and parole were also discussed in *Jett.* In the present case, W. Va. Code, 25-4-6, carries with it the right to gain probation.[7] The statute does not prescribe the length of the probation term and, as noted in *Jett,* it has no correlation to the underlying criminal sentence. In this respect, the *Jett* rationale controls and we, therefore, conclude that appellant was not entitled to a credit for the time spent on probation.

Finding no error in the judgment below, we affirm it.

*Affirmed.*

---

[7] The pertinent portion of W. Va. Code, 25-4-6, is:

"When, in the opinion of the superintendent, any boy has satisfactorily completed the center training program, such male offender shall be returned to the jurisdiction of the court which originally committed him. He shall be eligible for probation for the offense with which he is charged, and the judge of the court shall immediately place him on probation. In the event his probation is subsequently revoked by the judge, he shall be given the sentence he would have originally received had he not been committed to the center and subsequently placed on probation. The court shall, however, give the defendant credit on his sentence for the time he spent in the center."