**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 21-0472** (Berkeley County CC-02-2019-F-334)

**Michael Lee White,**
**Defendant Below, Petitioner**

# MEMORANDUM DECISION

Petitioner Michael White[1] appeals the May 24, 2021, order of the Circuit Court of Berkeley County revoking petitioner's home incarceration and sentencing him to an indeterminate five-to-twenty-five-year term of incarceration. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R.A.P. 21.

In October of 2019, petitioner was indicted on six counts of distribution of a controlled substance (fentanyl) and one count of distribution of a controlled substance (heroin). In January of 2021, petitioner was placed on home incarceration as a condition of pretrial bond and agreed to its terms and conditions. In February of 2021, the parties entered into a plea agreement by which petitioner agreed to plead guilty to two counts of distribution of a controlled substance (fentanyl), and the State agreed to dismiss the remaining counts. In April of 2021, petitioner pled guilty, and the circuit court sentenced him to two-to-ten years of incarceration for one count and three-to-fifteen years of incarceration for the other. The court ordered that these sentences run consecutively, resulting in an aggregate sentence of five-to-twenty-five years of incarceration. The court further ordered that petitioner serve his sentence on home incarceration "under standard terms and conditions as well as any other term deemed necessary by the supervising officer to meet [petitioner's] needs."

On May 5, 2021, the State filed a motion to revoke home incarceration, alleging that petitioner violated the terms and conditions seventeen times. The first nine of the listed violations

---

[1]Petitioner appears by counsel Bradley Wright. The State of West Virginia appears by counsel Patrick Morrisey and Mary Beth Niday.

1

occurred prior to petitioner's sentencing date, between January 8, 2021, and March 21, 2021, and the remaining seven occurred after sentencing. In general, petitioner was alleged to have used alcohol once (in January of 2021), "depart[ed] his residence and/or [made] unauthorized stops" twelve times, allowed his GPS monitor to shut off due to lack of power (twice prior to sentencing), and failed to report for drug treatment at the day report center as directed. The motion indicated that petitioner "was direct[ed] to contact [the case manager at the day report center] for treatment due to his failed [alcohol] screen and has refused treatment." According to the motion, petitioner signed voluntary admission forms for each listed violation.

The circuit court held a home incarceration revocation hearing on May 20, 2021. Petitioner challenged the admissibility of all seventeen violations based on the fact that some of the violations occurred prior to his sentencing. Ultimately, the circuit court ruled that, in determining whether a violation had occurred, it would consider only the violations that were alleged to have occurred after sentencing. However, if it determined that a violation had occurred, it would consider the totality of the violations at disposition.

The home incarceration officer testified that the rules of home incarceration delineated authorized and unauthorized locations but gave the option for incarcerated individuals to text their home incarceration officer for permission to travel to unauthorized locations. The officer testified that petitioner committed numerous violations between April 30, 2021, and May 2, 2021, including making four unauthorized stops when he was otherwise required to be at home; traveling to a store without permission during a two-hour round trip; traveling to a clothing store without prior permission; and allowing the battery in his GPS monitor to die.[2]

The home incarceration officer also testified that he referred petitioner to the day report center on March 22, 2021, prior to the sentencing date, after petitioner tested position for alcohol on January 8, 2021. However, petitioner never reported to the center. According to the officer, his policy was to refer every individual who tested positive for alcohol or controlled substances to the day report center for alcohol or drug treatment/counseling. The officer explained that petitioner was initially supervised by a different officer in January of 2021, which was why the referral was not made until March.

The officer clarified that petitioner did not have a set schedule for work or other responsibilities. Petitioner would meet with the officer on Fridays to discuss his weekend schedule, but there was no other schedule provided. The officer explained that the text messaging system was the best way to receive approval to travel out of the home. The evidence showed that petitioner was aware of these terms and messaged the officer seeking approval for travel multiple times, and, in some instances, the officer did not respond to his requests.

Ultimately, the circuit court found that petitioner violated the terms and conditions of home incarceration. It determined that petitioner traveled without authorization to multiple locations

---

[2]The officer clarified that petitioner requested authorization to travel on May 2, 2021, but explained that petitioner left his home prior to requesting authorization and did not wait for authorization before continuing his travel.

between April 30, 2021, and May 2, 2021. The court also found that petitioner allowed his GPS monitor battery to die, which was especially concerning considering that petitioner was provided with a car charger for the monitor, which facilitated keeping the device charged. Regarding petitioner's attempts to seek authorization, the circuit court found that petitioner left his home regardless of whether he was granted authorization, which was in clear violation of the terms of his home incarceration. The circuit court proceeded to disposition and imposed petitioner's underlying sentence, relying on his extensive criminal history and his failure to comply with the requirements of his home incarceration. The circuit court's May 24, 2021, order memorialized its decision. Petitioner now appeals that order.

On appeal, petitioner asserts that the circuit court erred in failing to include a set schedule in the order sentencing him to home incarceration and abused its discretion in finding that he failed to report to the day report center as required by his home incarceration officer.[3] Our home incarceration statute provides:

> If, at any time during the period of home incarceration, there is reasonable cause to believe that a participant sentenced to home incarceration by the circuit court has violated the terms and conditions of the circuit court's order of home incarceration and the participant's participation was imposed as an alternative sentence to another form of incarceration, the participant is subject to the same procedures involving confinement and revocation as would a probationer charged with a violation of the order of home incarceration.

W. Va. Code § 62-11B-9(b), in part. We, therefore, review the questions before us in the same manner we would review the revocation of probationary home incarceration.

> "When reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus Point 1, *State v. Duke*, 200 W.Va. 356, 489 S.E.2d 738 (1997).

Syl. Pt. 1, *State v. Hosby*, 220 W. Va. 560, 648 S.E.2d 66 (2007).

In this case, there is no meaningful dispute that petitioner violated the terms and conditions of his home incarceration. Petitioner acknowledged the terms and conditions of his home incarceration and signed voluntary admission forms for each violation. We find petitioner's argument that the lack of a predetermined schedule prejudiced him unavailing. In the circuit court's

---

[3]Petitioner also asserts that the circuit court failed to advise him of the possible penalties for violating the terms of his home confinement. However, the record shows that the circuit court clearly informed petitioner of those penalties during the April of 2021 sentencing hearing, and we find no error in that regard.

words, "while a texting system is certainly not optimal, it is the system with which [petitioner] was told to follow, and he essentially disregarded the system that was put in place." The circuit court found that petitioner traveled without authorization on multiple occasions and allowed his GPS monitoring system to lose power, which were clear violations of his terms of home incarceration.

Finally, petitioner argues that he was not afforded due process in the modification of the terms of his home incarceration, in accordance with this Court's holding in *Louk v. Haynes*, 159 W. Va. 482, 223 S.E.2d 780 (1976). However, petitioner failed to raise this issue below. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.'" *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)). Accordingly, we find no error in the circuit court's findings in this regard.

For the foregoing reasons, we find no error in the circuit court's May 24, 2021, order.

Affirmed.

**ISSUED**: October 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

Wooton, Justice, dissenting:

I would have set this case for oral argument on the Rule 19 docket to thoroughly address whether the circuit court's "Conviction and Sentencing Order" failed to comply with the provisions of West Virginia Code section 62-11B-5 in regard to petitioner's sentence of home incarceration and what impact the order's deficiencies had on the circuit court's decision to revoke petitioner's term of home confinement. Therefore, I respectfully dissent.

Petitioner was sentenced on drug-related charges to an aggregate term of five to twenty-five years to be served on home incarceration. However, the order failed to comply with the language of West Virginia Code section 62-11B-5; more specifically, failed to set out the terms of the home incarceration. Instead, the circuit court simply stated in the Conviction and Sentencing Order that petitioner's home incarceration would be served "under standard terms and conditions as well as any other term deemed necessary by the supervising officer to meet [petitioner's] needs."

4

West Virginia Code § 62-11B-5(1) provides:

> An order for home incarceration of an offender under section four of this article *is to include*, but not be limited to, the following:
>
> (1) A requirement that the offender be confined to the offender's home at all times except when the offender is:
>
> (A) Working at employment approved by the circuit court or magistrate, or traveling to or from approved employment;
>
> (B) Unemployed and seeking employment approved for the offender by the circuit court or magistrate;
>
> (C) Undergoing medical, psychiatric, mental health treatment, counseling or other treatment programs approved for the offender by the circuit court or magistrate;
>
> (D) Attending an educational institution or a program approved for the offender by the circuit court or magistrate;
>
> (E) Attending a regularly scheduled religious service at a place of worship;
>
> (F) Participating in a community work release or community service program approved for the offender by the circuit court, in circuit court cases; or
>
> (G) Engaging in other activities specifically approved for the offender by the circuit court or magistrate.

*Id*. (emphasis added).    Additionally, the statute provides for

> [a] requirement that the offender abide by a schedule, prepared by the probation officer in circuit court cases, or by the supervisor or sheriff in magistrate court cases, specifically setting forth the times when the offender may be absent from the offender's home and the locations the offender is allowed to be during the scheduled absences.

*Id*. § 62-11B-5(3).    Further, there is a "requirement that the offender obtain approval from the probation officer or supervisor or sheriff before the offender changes residence or the schedule described in subdivision (3) of this section." *Id*.    Finally, there are other express requirements set forth in the statute that unequivocally are to be set forth in the "order for home incarceration." Here, not one of the statutory requirements is set forth in the order.

Home incarceration is designed to place substantial restrictions on the offender.    *See State v. Long*, 192 W. Va. 109, 111, 450 S.E.2d 806, 808 (1994).    The statute requires these restrictions to be set forth in an order.    Severe consequences exist if the restrictions are violated – in this case imposition of a term of incarceration of five to twenty-five years.    The existence of a court order

5

that complies with the provisions of West Virginia Code section 62-11B-5 ensures that petitioner fully knows and understands the conditions or requirements of home incarceration that the court expects him to follow. *See id.* None of those requirements were reduced to a written order by either the circuit court complying with the statute, or the probation officer preparing a "schedule" that "specifically" sets forth "the times when the offender may be absent from the offender's home and the locations the offender is allowed to be during the scheduled absences." *Id.*

Instead, the home incarceration officer simply had petitioner text him to seek approval any time he needed to go somewhere. This practice simply is not contemplated by the statutory language of West Virginia Code § 61-11B-5(3) as it is not a schedule prepared by the probation officer. This failure to comply with the statute created a whole set of problems – most notably an imprecise and uncertain system which unequivocally led to petitioner's technical violations. For instance, petitioner's home incarceration officer would sometimes take anywhere from several hours to several days to respond to petitioner's requests to travel (if he responded at all). In the interim, petitioner (without authorization) stopped to get gas, stopped for food to eat while at work, stopped at multiple locations to obtain money to pay his home incarceration fees, went to his attorney's office, and went to church. These unauthorized trips constituted the bulk of petitioner's violations and could have been avoided had a proper schedule been provided for him as required by the statute.[4]

Given that the unauthorized travel is almost entirely attributable to the circuit court's deficient order and the home incarceration officer's failure to prepare a schedule for petitioner to follow as required by statute, a closer examination of whether petitioner's home incarceration was properly revoked was warranted by setting this case for Rule 19 argument.

---

[4] Petitioner had one additional violation for allowing his GPS monitor battery to die, but that insignificant violation taken alone would be unlikely to warrant revocation of his home confinement.