Hamilton Doherty, J.
This is an article 78 proceeding in which the petitioner seeks relief from the court, directing his return from the Attica Correctional Facility (Attica) to the Albion Correctional Facility (Albion) on the ground that his transfer from Albion to Attica violated his constitutional right to due process.
The respondents have denied any knowledge or information sufficient to form a belief as to the facts outlined in the petition. Upon the hearing held hereon the Assistant Attorney-General in answer to the court’s inquiry advised the court that he was unable to verify the allegations nor would he be able to do so if given an adjournment for that purpose. For the purposes of this proceeding, therefore, the allegations of the petition relative to the factual situation are, except as specifically denied by the respondents, accepted by the court as being true.
According to the affidavit of Theodore C. Reid, Superintendent at Albion, which forms a part of the respondents’ answer, the petitioner was received at the reception center at Elmira on November 3, 1967 having been convicted of the following crimes:
1. Robbery first degree for which he was sentenced to a term of 15 to 20 years.
2. Robbery first degree, 15 to 20 years.
*809 3. Assault first degree, 5 to 10 years, such three sentences to run concurrently.
4. Assault third degree, 2% to 5 years consecutively.
5. Illegal possession of a weapon, 5 to 10 years consecutive with all of the foregoing.
Pursuant to chapters 343 and 344 of the Laws of 1972 (Correction Law, § 212-a) all these sentences were compacted into one sentence of 8 years, 4 months to 35 years. This made the petitioner’s maximum sentence expire on January 19, 2002, gave him a conditional release date of May 19, 1990 and a statutory release date of March 19,1996. He does however ¡become eligible for parole May 19, 1975 and is scheduled to meet the April, 1975 Parole Board.
By August, 1974 the petitoner had been transferred to Attica, a maximum security facility, and from there submitted his request for transfer to Albion, a minimum security facility where the opportunities for rehabilitation and work both inside and outside the facility grounds are more varied. His application went through a correction counselor, a program committee at Attica, the Superintendent at Attica, and the central office of the Division of Inmate Classification and Movement at Albany. On September 13,1974 the petitioner was advised that he had been found unacceptable by the Albany office because he was considerd a security risk due to his lengthy minimum sentence. He sought and was given another interview with the Service Unit at Attica, explained the compacting of his sentences which resulted in the reduction of his minimum sentence, which information, he was informed, was passed along to the head clerk, the senior parole officer, and ultimately to the central office of the Division of Inmate Classification and Movement. The people at Attica agreed to review his situation and make further recommendation to Albany, which was done and on November 4 the petitioner was transferred to Albion.
At Albion he sought and secured his own employment in the garage at the Albion facility, where, according to Mr. Beid’s affidavit, his work record was good, and from all the information before the court he had no trouble complying with the requirements of the facility so far as discipline and behavior were concerned.
On November 19,1974, the petitioner was taken from his work at the garage, locked in a cell in the only maximum security section at Albion, advised that he was being returned to Attica, put into leg irons, handcuffs and a restraint belt, and in 30 *810 minutes was summarily returned to Attica. He was told by one of the correction officers that a phone call had been received from the Albany office which had reviewed the petitioner’s record and decided he was unsuitable for Albion.
The petitioner was given no notice of the impending transfer nor any hearing relating to it. He alleges that this constitutes a violation of his constitutional right to due process, citing Newkirk v. Butler (364 F. Supp. 497, mod. 499 P. 2d 1214).
It is clear from Newkirk v. Butler (supra), that the petitioner was entitled to “ rudimentary due process ” before his transfer from a minimum security facility to a maximum security facility could ibe effected. There is no doubt that the loss suffered by Hatzman is more severe than that suffered by Newkirk, since he was transferred from minimum security to maximum security whereas Newkirk was transferred merely from medium security to maximum.
There can be no question that the transfer from Albion to Attica constituted a “ grievous loss ” within the meaning of Morrissey v. Brewer (408 U. S. 471), Sostre v. McGinnis (442 F. 2d 178), Fuentes v. Shevin (407 U. S. 67), Board of Regents v. Roth (408 U. S. 564, 570-571), Goldberg v. Kelly (397 U. S. 254), Gomes v. Travisono (490 F. 2d 1209), Newkirk v. Butler (supra).
At Albion the inmates live in dormitories, at Attica in locked cells; at Attica the correction officers wear side arms, while most of those at Albion do not; access to libraries and recreation facilities is more restricted at Attica; conditions generally are more crowded at Attica than at Albion; rehabilitation programs at Albion are broader and more readily available. According to the petitioner the food at Albion is substantially better and he was able at Albion to receive medical care and diagnosis of an ulcer as an explanation for a pain in his side with accompanying constipation and gas which he had suffered for two years at Attica, for which a diet was prescribed and available at Albion but not at Attica. The medication given to him at Albion for such condition was taken from him at Attica as contraband. Visiting hours at Albion were from 8:30 a.m. to 10:00 p.m. on weekends and from 5:00 to 10:00 p.m. daily, whereas they were restricted to 9:30 a.m. to 3:30 p.m. seven days a week at Attica. The petitioner also enjoyed considerably more freedom, including work outside the facility grounds and the opportunity to go to town unescorted1 by armed guards. The respondents in their answer and return deny the specific allegations relative to the difference between the two facilities, but on the argument did not take issue with the petitioner’s over-all claim that the *811 transfer from the minimum security at Albion to the maximum security at Attica constitutes “ grievous loss
It is obvious from the sequence of events as above outlined that the Superintendent at Albion has less confidence in the rehabilitative processes of the correctional system than do the Director of Inmate Classification and Movement, the correction counselors, program committee, and Superintendent at Attica. For this he may have good reasons, but if so they do not appear in anything before this court. It is clear both from the letter from Mr. Reid to the petitioner dated November 26, 1974 and from Reid’s affidavit, attached to the reply and return, that the decision to transfer the petitioner back to Attica was based largely on his behavior prior to his imprisonment, although there is a reference to “ your subsequent behavior ” in his letter of November 26, 1974. The petitioner seems to concede that his adjustment to prison life was difficult and that there were breaches of institutional rules during the first five years of his incarceration, but points out that his only difficulty in the past two and a half years was a “ minor keep-lock ”, which was more than a year and a half ago. It seems reasonable to assume that the various people and committees at Attica and the central office of Inmate Classification and Movement had considered the nature of the petitioner’s crimes (which were indeed heinous) and his behavior in incarceration, in making the judgment that he was eligible for transfer to Albion. This is particularly so since his initial application was denied but upon reconsideration of his request was granted.
I therefore find that the petitioner has been deprived of the constitutional process due him as outlined in Newkirk v. Butter (supra) and direct that, an order enter directing the petitioner’s return to Albion for a hearing before an impartial panel which, in this case, should not include the respondent Reid, whose decision and order resulted in the petitioner’s transfer, nor Lt. Nicholas De Santis who falsely advised the petitioner that his transfer was the result of a phone call from Albany. Ideally such panel might consist of one correction officer, one representative of the inmate liaison committee if any there be, and one staff member who is not a correction officer, but this is offered as a suggestion only, since it is not this court’s intention to become involved in the administration of the correction facility. The petitioner is entitled to (1) notice that a transfer is contemplated; (2) notice of the reasons of the proposed transfer; (3) a personal hearing before a decision-making panel as above set forth; and (4) a reasonable opportunity, at the *812 hearing, to controvert factual assertions concerning the petitioner which have ¡been advanced in support of the decision to transfer. (Gomes v. Travisono, 490 F. 2d 1209.)" The petitioner should have the right to produce any witnesses who will substantiate this claim, hut is not entitled to the help of a lay advocate or attorney or to administrative review. The evidence produced at such hearing should be such as, taking into consideration anything the petitioner has to offer, satisfies the panel that the transfer is justified, and in the best interests of the operation of the facility. (See, also, Newkirk v. Butler, supra.)