DAVID GLENN WATSON

*v.*

WILLIAM WHYTE, *Superintendent*
*Huttonsville Correctional Center*

(No. 14120)

Decided July 11, 1978.

*J. Cecil Jarvis, McNeer, Highland & McMunn* for relator.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for respondent.

HARSHBARGER, JUSTICE:

David Glenn Watson pleaded guilty to entering without breaking and was sentenced by the Circuit Court of Harrison County to the custody of the Commissioner of Public Institutions under *W.Va. Code*, 25-4-6,[1] for an in-

_____

[1] § 25-4-6. The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth

determinate term of six-months to two-years' confinement in a "center."[2]

He was sent to Davis Forestry Center, and remained there from March until September of 1977. Then the center superintendent notified the sentencing court that petitioner was unfit for the center and requested that he be returned to court. This was done, and on September 14, 1977, a "hearing" was held after which he was sentenced to the West Virginia Penitentiary for an indeterminate term of one-to-ten years with the recommendation that he be considered for parole at the earliest opportunity.

A letter[3] from the superintendent was the only "evi-

convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions to be assigned to a center. The period of confinement in the center shall be for a period of six months, or longer if it is deemed advisable by the center superintendent, but in any event such period of confinement shall not exceed two years. If, in the opinion of the superintendent, such male offender proves to be an unfit person to remain in such a center, he shall be returned to the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted. In his discretion, the judge may allow the defendant credit on his sentence for time he has spent in the center.

[2] The center was established by *W.Va. Code*, Chap. 25, art. 4. Section 1 of the article states:

The purpose of this article is to provide appropriate facilities for the housing of youthful male offenders convicted of or pleading guilty to violation of law before courts with original jurisdiction or juvenile courts, who are amenable to discipline other than in close confinement; to secure a better classification, and segregation of such persons according to their capabilities, interests, and responsiveness to control and responsibility; to reduce the necessity of expanding the existing grounds and housing facilities for the confinement of such persons, and to give better opportunity to youthful offenders for reformation and encouragement of self-discipline. (1955, c. 16.)

[3] "Dear Judge Ziegler:

We are returning David Glen Watson to your Court as unfit for Davis Center.

dence" introduced at the hearing, and petitioner's counsel unsuccessfully moved to dismiss the proceeding because of the failure of the state to produce any evidence.

Petitioner contends that his transfer from the Davis Center involved loss of a liberty interest which should have invoked the due process protections of the U. S. Constitution's Fourteenth Amendment,[4] and that his hearing was inadequate.

The United States Supreme Court has found due process standards applicable in several post-coviction situations including parole revocations, *Morrissey v. Brewer*, 408 U.S. 471 (1972); probation revocations, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973); and prison disciplinary proceedings, *Wolff v. McDonnell*, 418 U.S. 539 (1974).[5] In *Wolff*, the court said:

> [A] person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection of the individual against arbitrary action of government, Dent v. West Virginia, 129 U.S. 114, 123 (1889). Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed. 418 U.S. at 558.

However, the Supreme Court in *Meachum v. Fano*, 427 U.S. 215 (1976), decided that State prisoners have no

---

Dave feels that he should be out on the streets and that he should not have to go to Moundsville.

It is our opinion he should be placed in protective custody and complete original sentence to Moundsville.

This is the second time he has been placed in the Tucker County Jail. He is unable to function here.

He may be picked up at the Tucker County Jail at your earliest convenience. He was placed in jail today.

We are sorry that we could not do more for this youth."

[4] "No state shall . . . deprive any person of life, liberty, or property, without due process of law. . . ." U.S. Court., Amdt. 14, §1.

[5] The particular liberty interest in *Wolff* involved loss of good-time credits, thus lengthening the period of incarceration.

constitutional right to hearings in federal courts about proposed transfers to other state institutions. The transfers were to more severe prison environments (but involved no extension of "time"). The Court reasoned that when a criminal defendant is convicted, he is deprived of his liberty to the extent that the state can put him in its prison system anywhere it chooses, and he cannot thereafter complain upon being shifted from one institution to another. "The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."

We cannot agree with the black-and-white characterization of the liberty status of convicted criminals that the Court adopted, making them, as Justice Stevens mentioned in his perceptive dissent, slaves of the state.[6]

Our federal and state constitutions do not *give* liberty to people: they protect a free people from deprivation of their God-given freedom by governments. The entitlement to liberty and freedom must follow every citizen from birth to death, however mean or degenerate he may be viewed by his government or his peers at any given time along the way.

And so, the physical deprivation of his liberty must at every stage carry the burden upon the state to overcome the great presumption that he is a free man. His constitutional rights follow him into prison, or mental hospital, or military servitude, or wherever he is forced by the government to be.

Therefore, although it is true that restrictions upon liberty are implicit in the penal system, each must be imposed reluctantly; and new ones, with due process of law.

Our Court has also held minimum due process requirements applicable to parole revocation, *Dobbs v. Wallace*, ___W. Va.___, 201 S.E.2d 914 (1974); probation revocation, *State ex rel. Strickland v. Melton*, 152 W. Va. 500,

---

[6] J. Stevens, dissenting in *Meachum v. Fano*, quoting from *Ruffin v. Commonwealth*, 62 Va. 790, 96 (1871).

165 S.E.2d 90 (1968); and administrative segregation of prisoners from the prison population, *Tasker v. Griffith,* ____W. VA.____, 238 S.E.2d 229 (1977), and although we have no cases dealing with procedural due process in the context of prison discliplinary proceedings, we cited with approval in *Tasker,* the due process requirements of *Wolff v. McDonnell, supra.*[7]

This case is analogous to *Wolff* in that petitioner's claim springs from a state-created situation, and applying the principles of that case, we find that when the government has proceeded against an offender under *Code,* 25-4-6, and sentenced him to a forestry center, it cannot arbitrarily abrogate the right to remain there. *See, Inmates of Boys' Training School v. Affleck,* 346 F. Supp. 1354 (D.R.I. 1972) involving the transfer of juveniles from a training school to an adult correctional facility. *See also* the following cases in which due process requirements have been found applicable to transfers: *Aikens v. Lash,* 371 F. Supp. 482 (N.D.Ind. 1974); *Shone v. State of Maine,* 406 F.2d 844 (1st Cir. 1969); *Hatzman v. Reid,* 80 Misc.2d 808, 364 N.Y.S.2d 396 (1975).

In *Tasker,* we found that due process safeguards are applicable to the procedures involved in removing an inmate from the general prison population and placing him in "administrative" segregation.[8] If internal transfers such as those in *Tasker* from one restrictive environment to another more restrictive environment inside

---

[7] *See, Tasker* at 233.

[8] Those safeguards are:

(a) prison authorities must advise the inmate that he is under investigation for misconduct;

(b) the inmate should be advised of the specific offense under investigation unless authorities determine that such disclosure could adversely affect the investigation;

(c) when the investigation is concluded, authorities must inform the inmate of the findings;

(d) the inmate should receive an explanation of the charges against him;

(e) prison officials must have specific reasons for determining that effective investigation of the charges requires isolation of the inmate involved.

the prison require due process protections, then transfers from one penal setting to another more severe confinement, require due process. Although an offender has no right to be confined to a particular institution in the State[9] and no right to initially choose where he is sentenced under *Code*, 25-4-6, if he is sentenced to the casual confinement of a "forestry center" he cannot then be transferred as unfit, to the penitentiary, without a hearing.

We recognize that there is contrary authority. In *People v. Ferrel*, 25 Cal. App. 3d 970, 102 Cal. Rptr. 372 (1972), the court interpreted a California statute very similar to our own code provision for return of youthful offenders to the original court,[10] and held that no hearing was required when the California Youth Authority rejected the defendant. The Court said:

> ". . . [In] determining whether or not a particular procedure violates due process requirements, we should bear in mind the probable costs and consequences involved in casting excessive burdens upon administrative machinery. [Citations]"
>
> . . .
>
> We hold that section 1737.1 of the Welfare and Institutions Code does not violate due process of law. The statute is designed to facilitate the handling by the Youth Authority of juvenile offenders who, in the opinion of the authority, are

---

[9] *Meachum v. Fano, supra.*

[10] In 1972, Section 1737.1 of the California Welfare Institutions Code provided:

"Whenever any person who has been charged with or convicted of a public offense and committed to the authority appears to the authority, either at the time of his presentation or after having become an inmate of any institution or facility subject to the jurisdiction of the authority, to be an improper person to be retained in any such institution or facility, or to be so incorrigible or so incapable of reformation under the discipline of the authority as to render his detention detrimental to the interests of the authority and the other persons committed thereto, the authority may return him to the committing court. . . ."

amenable to treatment through its available resources. It would cast an excessive burden upon the administrative machinery at this juncture for this court to order a hearing after the Youth Authority rejected defendant.... 102 Cal. Rptr. at 376

We envision no such excessive burden on our administrative or judicial machinery and surely not one sufficient to convince us to sacrifice an individual's constitutional right to the least restrictive confinement possible, consistent with his rehabilitation or punishment, for the sake of lessening the government's work. A lot of mischief could surely be accomplished were expediency determinative of whether constitutional rights exist.

Since we have decided that due process applies to the return procedures authorized by *Code*, 25-4-6, we must now address the question of what process is due.

The minimum due process requirements applicable to probation and parole revocations prescribed in *Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra;* and *Louk v. Haynes,* ____W. Va.____, 223 S.E.2d 780 (1976), are:

> (a) written notice of the claimed violations ...; (b) disclosure ... of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ...; and (f) a written statement by the factfinders as to the evidence called on and reasons for ... [the transfer].

These apply here, and in addition, because the defendant will be confronted by a government prosecutor, he is entitled to counsel.

We find that these requirements may be satisfied by an evidentiary hearing in the original sentencing court.

The case is remanded to the Circuit Court of Harrison County for proceedings consistent with this opinion.

*Writ awarded.*