324 S.E.2d 379

**STATE of West Virginia**

v.

**Joseph E. STUCKEY, Jr.**

No. 16241.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1984.

John Ernest Shank, Asst. Atty. Gen., Charleston, for appellee.

David P. Born, Fairmont, for appellant.

PER CURIAM:

This is an appeal by Joseph E. Stuckey, Jr., from an order entered November 1, 1982, by the Circuit Court of Marion County committing him to one to ten years in the State penitentiary for breaking and entering. The appellant had previously been sentenced as a youthful male offender to the Anthony Center and had been returned to the circuit court as being unfit to remain at the Center. On appeal, the appellant contends that the procedures used in transferring him from the Anthony Center, and in sentencing him to the State penitentiary, were defective.

The appellant, who was then eighteen years old, pled guilty to breaking and entering pursuant to a plea bargain agreement. Since he qualified as a "youthful male offender" under W.Va.Code, 25–4–6, the court suspended the sentence and ordered that the appellant be transported to the Anthony Center, the center for youthful male offenders, for six months to two years.

On July 24, 1983, an incident occurred at the Anthony Center. An argument erupted during a basketball game. As a result of the argument, an officer supervising the game ordered that the playing of all games by residents of the Center be stopped for a time.

Although the appellant was not playing at the time the argument erupted, he was sitting at the side waiting to play the next game. According to hearsay evidence subsequently adduced by the State before the circuit court, the atmosphere during the argument was tense. The appellant, according to the State, began to complain that the officer was being unfair and prejudicial in ordering that all games be stopped. He was then charged with taking part in or instigating a riot. According to the testimony of the appellant, he was not "yelling or screaming" or using abusive language, but he did state to one official that he felt it was discriminatory to allow one group to play and not allow his group to play.

As a result of the charge against the appellant, he was tranferred from the Anthony Center to the Circuit Court of Marion County, after officials at the Center had conducted a hearing. Upon being returned to the circuit court, the appellant was granted a court hearing.

The appellant's principal assignments of error in the present proceeding involve the nature of the hearing before the circuit court. He argues that the only witness presented by the State before the circuit court was not an eyewitness to the basketball incident, but was a member of the committee who had heard his case at the Anthony Center. In effect, he claims that the circuit court did not hear or consider any direct evidence and that the court's decision was improperly based wholly on hearsay evidence. He also claims that the circuit court erred in failing to consider properly his eligibility for probation.

■ W.Va.Code, 25–4–6, governs the assignment of youthful male offenders to the Anthony Center, their return to the circuit court originally sentencing them under certain circumstances, and the disposition of them if they are returned to the sentencing court. It provides, in part, that:

> "If, in the opinion of the superintendent [of the Center], such male offender proves to be an unfit person to remain in such a center, he shall be returned to

the court which committed him to be dealt with further according to law. In such event, the court may place him on probation or sentence him for the crime for which he has been convicted."

In Syllabus Point 2 of *Watson v. Whyte*, 162 W.Va. 26, 245 S.E.2d 916 (1978), we recognized that a youthful male offender, upon being returned to a sentencing court, is entitled to certain rights:

"A youthful male offender, sentenced to confinement in a special center pursuant to *W.Va.Code*, 25-4-6, is entitled to an evidentiary hearing when he is returned, as unfit, to the sentencing court and faces resentencing to the penitentiary; and he is entitled to counsel to assist him in the hearing before the sentencing court."

We further stated that at his hearing an offender is entitled to the minimum due process requirements applicable to probation revocations as prescribed in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and in *Louk v. Haynes*, 159 W.Va. 482, 223 S.E.2d 780 (1976). These rights include the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing such confrontation.[1]

A number of jurisdictions have addressed the question of whether hearsay is admissible in probation revocation proceedings. While several have recognized that the introduction of such evidence is not reversible error, a number have held that a revocation of probation may not be based on hearsay alone. For example, in *Hill v. State*, 350 So.2d 716, 718 (Ala.Crim.App. 1977), the Alabama court, in examining whether a probation revocation could be based solely on a probation officer's report, concluded that it could not:

"His probation was revoked solely upon the basis of hearsay evidence.... The probation officer's report was the only evidence introduced against the appellant. The use of such hearsay evidence denied the appellant the right to confront and cross-examine the persons who originated the factual information which formed the basis for revocation of his probation."

In *People v. White*, 33 Ill.App.3d 523, 338 N.E.2d 81 (1975), the Illinois court held that, at least where there is an objection, hearsay testimony is not competent standing alone to sustain the state's burden of proof that a probationer whose probation is sought to be revoked has violated the terms of his probation. The court reasoned that the state has the burden of proving alleged violations by a preponderance of the competent evidence and that hearsay alone would not constitute competent evidence sufficient to prove the fact. In *State v. Carter*, 5 Kan.App.2d 201, 614 P.2d 1007 (1980), the Kansas court reached the same conclusion.

In *State v. Caron*, 334 A.2d 495, 498 (Me.1975), the Maine court concluded:

"In terms of policy, a minor use of hearsay testimony can be consistent with the informality and expedition desirable for the kind of revocation of probation hearing now under scrutiny; therefore, we see no reason to prohibit hearsay evidence in such proceeding to the same extent it is prohibited in a criminal prosecution. We add the caveat, however, that if, in a given context, the hearsay evidence is unreasonably abundant and its substantive reliability highly suspect, a decision founded on it may be subject

---

1. The full list of rights is set forth in *Watson*, 162 W.Va. at 32, 245 S.E.2d at 919-20:

"The minimum due process requirements applicable to probation and parole revocations prescribed in *Gagnon v. Scarpelli, supra; Morrissey v. Brewer*, [408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)], and *Louk v. Haynes*, [159 W.Va. 482], 223 S.E.2d 780 (1976), are:
(a) written notice of the claimed violations ...; (b) disclosure ... of evidence against

him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body ...; and (f) a written statement by the factfinders as to the evidence called on and reasons for ... [the transfer]."

to vitiation for violation of 'due process of law' fairness standards."

■ The law has been summarized as holding: "Although a revocation of probation may not be based on hearsay evidence alone, a revocation of probation will stand even though hearsay evidence was introduced at a hearing, provided there was additional competent evidence sufficient to support the revocation." 21 Am.Jur.2d *Criminal Law* § 579 (1981). We believe that this statement is supported by a majority of cases. *See* Annot., 11 A.L.R.4th 999 (1982). It is applicable to a transfer under the youthful male offender statute, W.Va.Code, 25–4–6, where the offender faces resentencing, because of the close analogy to a probationary hearing, as we have pointed out in *Watson*. We have also pointed out that a juvenile transfer hearing under W.Va.Code, 49–5–10, cannot be based entirely on hearsay. *State v. Largent,* W.Va., 304 S.E.2d 868 (1983).

■ Our definition of hearsay is stated in Syllabus Point 9 of *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879 (1982):

"We have generally defined hearsay as where a witness testifies in court with regard to out-of-court statements of another for the purpose of proving the truth of the matter asserted."

*See also Salerno v. Manchin,* 158 W.Va. 220, 213 S.E.2d 805 (1974); *State v. Paun,* 109 W.Va. 606, 155 S.E. 656 (1930). Under this test, the evidence presented by the State before the circuit court in the case before us was clearly hearsay. The witness who testified was an officer at the Center who had participated in the hearing at which it was determined that the appellant was unfit to remain at the Center. She testified as to the nature of the appellant's behavior during the basketball incident even though she had not witnessed the incident. Thus, the entire testimony was hearsay.

A second point argued by the appellant is that the sole focus of the circuit court's inquiry was on the question of whether he was guilty of conduct sufficient to justify his transfer from the Anthony Center. He contends that the circuit court committed

him to the State penitentiary before considering appropriate alternative dispositions. Our statute governing the transfer of youthful male offenders, W.Va.Code, 25–4–6, clearly empowers the circuit court to make alternative dispositions of offenders who are found to be unfit to remain at a youthful offender center. It provides that after finding an offender unfit to remain at a center a court "may place him on probation or sentence him for the crime for which he has been convicted." This comports with the language in *Gagnon,* 411 U.S. at 784, 93 S.Ct. at 1760–61, 36 L.Ed.2d at 663, where the United States Supreme Court quoted with approval from *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), with regard to the two-step inquiry at a revocation hearing:

"In *Morrissey,* we recognized that the revocation decision has two analytically distinct components:

'The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?' 408 U.S. [at 479–480, 92 S.Ct. at 2599, 33 L.Ed.2d at 493].' "

■ We believe that, as in probation or parole revocation proceedings, a circuit court dealing with a returned offender from a center for youthful offenders should address two questions: first, whether the offender is unfit to remain at the center; and, second, if it is determined that he is, whether the circuit court should hear evidence on the question of disposition. On the basis of that evidence, the circuit court should determine what disposition should be made of the offender. In the case presently before us, we believe that the circuit court erred in failing to consider evidence

on the dispositional question.[2]

For the reasons stated, the judgment of the Circuit Court of Marion County is reversed, and this case is remanded for a reconsideration of the questions presented in a hearing conducted in accordance with the concepts discussed herein.

Reversed and Remanded.

---

2. The appellant also makes assignments of error about the nature of the hearing conducted at the Anthony Center. Since the record is unclear on the allegations that the appellant makes, and since we have concluded that the appellant is entitled to a full hearing before the circuit court, we decline to address those questions.