IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

FILED

May 20, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 23-184

STATE OF WEST VIRGINIA,
Respondent,

v.

LAWRENCE DAVONN FOYE,
Petitioner.

Appeal from the Circuit Court of Kanawha County
The Honorable Dan O'Hanlon, Senior Status Judge
Case No. 18-F-306

AFFIRMED

Submitted:  March 19, 2025
Filed:  May 20, 2025

John Sullivan, Esq.
Deputy Chief Public Defender
Charleston, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
William E. Longwell, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

JUSTICE ARMSTEAD deeming himself disqualified, did not participate in the decision.

JUDGE JOSHUA D. BUTCHER sitting by temporary assignment.

SYLLABUS BY THE COURT

1.      "'When reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review. We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review.' Syllabus Point 1, *State v. Duke,* 200 W. Va. 356, 489 S.E.2d 738 (1997)." Syllabus Point 1, *State v. Hosby*, 220 W. Va. 560, 648 S.E.2d 66 (2007).

2.      "'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W. Va. 684, 60 S.E. 873 (1908)." Syllabus Point 1, *State ex rel. McCabe v. Seifert*, 220 W. Va. 79, 640 S.E.2d 142 (2006).

3.      "'Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may

i

appropriately be decided.' Syl. Pt. 1, *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989)." Syllabus Point 2, *State v. Merritt*, 221 W. Va. 141, 650 S.E.2d 240 (2007).

4.      "'In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond all reasonable doubt.' Syllabus Point 1, *State ex rel. Appalachian Power Company v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965)." Syllabus Point 3, *State v. Legg*, 207 W. Va. 686, 536 S.E.2d 110 (2000).

5.      The standard required for a final parole or probation revocation hearing under West Virginia Code § 62-12-10(a)(1) (2013) is proof by a preponderance of the evidence.

ii

WALKER, Justice:

In January 2023, Lawrence Davonn Foye's probation officer filed a petition to revoke Mr. Foye's court-supervised parole, alleging that he committed three violations. Following a hearing, the Circuit Court of Kanawha County granted the petition and imposed the underlying sentence. Mr. Foye appeals and raises issues regarding the burden of proof applicable in these hearings and sufficiency of the evidence. We conclude that the standard required for a final parole or probation revocation hearing under West Virginia Code § 62-12-10(a)(1) (2013) is proof by a preponderance of the evidence. Because Mr. Foye did not contest two of the alleged violations, and the State presented sufficient evidence of the third, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October 2020, Lawrence Foye pleaded guilty to and was convicted of the felony offense of fleeing in a vehicle with reckless indifference to the safety of others. The circuit court sentenced him to serve not less than one nor more than five years' imprisonment but suspended the sentence in favor of home incarceration.

In October 2022, the circuit court granted Mr. Foye's motion for reconsideration of his sentence and placed him on a one-year term of court-supervised parole. Mr. Foye was subject to several parole conditions, including that he not "violate

1

any of the laws of the State of West Virginia," consort with "disreputable persons,"[1] nor use or possess any drugs described in the Uniform Controlled Substances Act unless prescribed by a licensed physician. Mr. Foye signed the order that set forth the parole terms and conditions, acknowledging that he understood and agreed to abide by them.

Because the circuit court granted Mr. Foye's request for parole after he served part of his sentence on home incarceration, his revocation was subject to the procedures set forth in West Virginia Code § 62-12-10, which uses the term probation rather than parole.[2] So, even though Mr. Foye was a "parolee," the statute governing revocation refers to "probationer." This Court has explained that "[t]he basic distinction between parole and probation, . . . is that the term of probation 'has no correlation to the underlying criminal sentence, while parole is directly tied to it.'"[3] That said, throughout

---

[1] The parole order specifically provides that Mr. Foye "shall refrain from frequenting unlawful or disreputable places or consorting with disreputable persons, including but not limited to, people who are charged with or have been convicted of a misdemeanor or felony, or are or have been on probation or parole, or any other person as directed by the supervising officer[.]"

[2] *See* W. Va. Code § 62-11B-12(b) (2002) (providing that when parole is granted following a sentence of home incarceration, parolee is subject to the procedures and penalties set forth in § 62-12-10).

[3] *State v. Cooper*, 167 W. Va. 322, 331, 280 S.E.2d 95, 100-01 (1981) (quoting Syl. Pt. 1, in part, *Jett v. Leverette*, W. Va., 247 S.E.2d 469 (1978)). Simply stated, probation is a term of conditional liberty imposed *instead of* a term of imprisonment, whereas parole is a term of conditional liberty imposed upon *early release* from prison.

this opinion, we acknowledge and attempt to minimize the confusion that the use of the two terms might create.

In January 2023, Huntington Police Detective Brandon Adkins filed a criminal complaint in the Magistrate Court of Cabell County charging Mr. Foye with the first-degree murder of Christopher Johnson, who was shot and killed in Huntington on November 30, 2022. Detective Adkins alleged that Mr. Foye, along with Matthew Daughtery, Malik Hawk, and Demarquis Patterson, "willfully and deliberately participated in the events that ultimately led to the death of Christopher Johnson." Mr. Foye was arrested, and at his preliminary hearing, the magistrate found probable cause to bind Mr. Foye's case over to the grand jury for indictment.

Mr. Foye's probation officer promptly filed a petition to revoke parole, alleging that Mr. Foye committed three violations when he (1) failed to abstain from possessing and using drugs described in the Uniform Controlled Substances Act as evidenced by his December 16, 2022 admission to using marijuana; (2) violated the laws of the State of West Virginia when he was charged with the felony offense of first-degree murder; and (3) failed to refrain from having contact with a disreputable person, Malik Hawk, who was in the car with Mr. Foye at the time of his arrest on the murder charge.

The circuit court held a hearing on the petition to revoke Mr. Foye's parole on February 24, 2023. Detective Adkins testified about his investigation into the murder

3

of Mr. Johnson, explaining that a "cooperating individual" who was at the scene of the crime provided him with the details of the murder and the names of four suspects, including Mr. Foye. Mr. Foye's counsel objected to this testimony as hearsay and the State responded that the Rules of Evidence do not apply to parole revocation hearings.[4] After the court overruled the objection, Detective Adkins stated that the information obtained from the cooperating witness was corroborated through cell phone extractions, call detail records, and video footage. He explained that Mr. Foye's cell phone data showed that he was in Huntington at the time of Mr. Johnson's murder. Detective Adkins also testified that he located a vehicle involved in the murder that Mr. Foye was alleged to have been using at the time. He stated that Mr. Foye was charged with first-degree murder, and that the magistrate court found probable cause to bind the case over to the grand jury.

During cross-examination,[5] Detective Adkins read Mr. Foye's criminal complaint on the record. It stated that, based on information obtained through a "cooperating witness," Mr. Foye, Mr. Hawk, Mr. Patterson, and Mr. Daughtery traveled

---

[4] Rule 1101 of the West Virginia Rules of Evidence states, in part, that, "[u]nless otherwise provided by rules of the Supreme Court of Appeals, these rules other than those with respect to privileges do not apply in the following situations: . . . (3) *Miscellaneous Proceedings.* Sentencing; granting or revoking probation or supervised release[.]"

[5] Before cross-examining Detective Adkins, counsel for Mr. Foye asked for the cell phone records. The State advised that it did not have the records in its possession and argued that it was unnecessary to provide them given the nature of the proceedings. The circuit court ruled that Mr. Foye was entitled to the records and directed counsel to proceed with questioning in the meantime.

4

from Charleston to Huntington in two separate vehicles, one being a black Chevrolet Blazer with a Texas license plate, and made plans to meet with Mr. Johnson. The four then separated into two groups, with Mr. Patterson and Mr. Daughtery meeting Mr. Johnson and Mr. Foye and Mr. Hawk remaining in the Blazer a short distance away. The complaint indicated that the cooperating witness heard gunshots, and security camera footage captured Mr. Daughtery running from the scene and being picked up by the Blazer, and Mr. Patterson leaving the scene in the second vehicle.

Detective Adkins testified that Mr. Daughtery was believed to be the primary shooter, but that Mr. Patterson had possibly been a shooter as well. He acknowledged that Mr. Foye did not appear to be a shooter as he was located approximately "half a block away." Detective Adkins stated that the cooperating witness was with Mr. Foye during the entire encounter but had not yet been charged.

After Detective Adkins testified, Mr. Foye's counsel informed the circuit court that Mr. Foye did not contest the allegations in the revocation petition that he used marijuana and failed to refrain from having contact with a disreputable person, Mr. Hawk. Mr. Foye's counsel stated that he did not plan to have Mr. Foye give a sworn admission, "[b]ut for the legal purpose of this hearing, we'll accept those violations [with the] understanding that they can lead to revocation."

5

The State called Mr. Foye's probation officer who testified that in the process of submitting to a drug screen in December 2022, Mr. Foye admitted to using marijuana and tested positive for that drug. The probation officer testified that she became aware that Mr. Foye was arrested and charged with the first-degree murder of Mr. Johnson and that he was having contact with a disreputable person, Mr. Malik. After the State presented its case, Mr. Foye did not testify or present any evidence.

At the conclusion of the hearing, the circuit court heard arguments from counsel who disputed the standard of proof that governs a parole revocation. The State maintained that under West Virginia Code § 62-12-10(a)(1), the standard of proof was "reasonable cause" to believe that Mr. Foye violated the terms of his parole.[6] On the other hand, Mr. Foye's counsel claimed that the standard was clear and convincing evidence, but on appeal to this Court he now admits that he misspoke and states that a "clear preponderance of the evidence" standard applies, citing *Sigman v. Whyte*.[7] The parties also disputed whether there was sufficient evidence for the court to conclude that Mr. Foye

---

[6] *See* W. Va. Code § 62-12-10(a), in part ("(1) If the court or judge finds reasonable cause exists to believe that the probationer: (A) Absconded supervision; (B) Engaged in new criminal conduct other than a minor traffic violation or simple possession of a controlled substance; or (C) Violated a special condition of probation designed either to protect the public or a victim; the court or judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed and order that sentence be executed.").

[7] *See* Syl. Pt. 4, *Sigman v. Whyte*, 165 W. Va. 356, 268 S.E.2d 603 (1980) ("Where a probation violation is contested, the State must establish the violation by a clear preponderance of the evidence.").

violated State law in connection with his murder charge. The court ruled from the bench that it would revoke Mr. Foye's parole based on all three violations.

The circuit court entered its Parole Revocation and Sentencing Order on March 2, 2023, revoking Mr. Foye's parole and sentencing him to not less than one nor more than five years of incarceration, for his conviction of fleeing in a vehicle with reckless indifference to the safety of others, with credit for time served. Mr. Foye appealed the circuit court's order to this Court.

Shortly before arguments were held in this matter in March 2025, the State informed this Court about two events that appeared to render Mr. Foye's appeal moot. First, Mr. Foye discharged his sentence at issue here on May 15, 2024. And second, following his *Kennedy*[8] plea for conspiracy to commit murder of Mr. Johnson in August 2024, Mr. Foye was convicted of the criminal offense that he contested at the parole revocation hearing.

---

[8] *See* Syl. Pt. 1, *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) (stating that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him.").

7

## II.  STANDARD OF REVIEW

Mr. Foye appeals the circuit court's order revoking his parole.  This Court has held that

> "[w]hen reviewing the findings of fact and conclusions of law of a circuit court sentencing a defendant following a revocation of probation, we apply a three-pronged standard of review.  We review the decision on the probation revocation motion under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review."[9]

The determination of whether the statutory procedures afforded an individual comport with the constitutional requirements for procedural due process presents a question of law we review de novo.

## III.  ANALYSIS

### A.  *Public Interest Exception to the Mootness Doctrine*

We begin with the observation that during the appellate process, Mr. Foye discharged the underlying sentence for his conviction of fleeing in a vehicle with reckless indifference to the safety of others.  Mr. Foye was also convicted of conspiracy to commit murder of Mr. Johnson—the only alleged parole violation he contested.  The State contends that these events render Mr. Foye's appeal moot because any decision granting his request

---

[9] Syl. Pt. 1, *State v. Hosby*, 220 W. Va. 560, 648 S.E.2d 66 (2007) (quoting Syl. Pt. 1, *State v. Duke*, 200 W. Va. 356, 489 S.E.2d 738 (1997)).

for relief would be futile as he has discharged the sentence at issue here and cannot be placed back on parole. Even so, Mr. Foye asks that we address the issues because they involve fundamental constitutional rights.

Our general rule is that "[m]oot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court."[10] Even so, this Court has recognized certain exceptions to this rule when we held that

> "[t]hree factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided."[11]

We agree with Mr. Foye that procedural due process protections pertaining to the revocation of parole is a matter of public interest, and a determination of the standard

---

[10] Syl. Pt. 1, *State ex rel. McCabe v. Seifert*, 220 W. Va. 79, 640 S.E.2d 142 (2006) (quoting Syl. Pt. 1, Syl. pt. 1, *State ex rel. Lilly v. Carter*, 63 W. Va. 684, 60 S.E. 873 (1908)).

[11] Syl Pt. 2, *State v. Merritt*, 221 W. Va. 141, 650 S.E.2d 240 (2007) (quoting Syl. Pt. 1, *Israel by Israel v. W. Va. Secondary Schs. Activities Comm'n,* 182 W. Va. 454, 388 S.E.2d 480 (1989)).

9

of proof required at a final parole revocation hearing should be addressed for the future guidance of the bar and of the public. So, we proceed to the merits of this appeal.

## B. Procedural Due Process

Parole revocation proceedings are not part of a criminal prosecution, so they are not subject to the same strict procedural requirements attendant to a criminal trial.[12] By the time Mr. Foye was charged with committing parole violations, his underlying criminal case had already been adjudicated. Mr. Foye escaped total loss of liberty only because the circuit court exercised its discretion and placed him on parole. Even though this Court has stated that "probation is a privilege of conditional liberty bestowed upon a criminal defendant through the grace of the circuit court[,]"[13] we held in *Louk v. Haynes*,[14] that the Due Process Clause of the Fourteenth Amendment of the United States Constitution requires a probationer who is arrested for violating the conditions of his probation to be afforded both a prompt preliminary hearing and a final revocation hearing.[15]

---

[12] *State v. Holcomb*, 178 W. Va. 455, 459, 360 S.E.2d 232, 236 (1987).

[13] *State v. Duke*, 200 W. Va. 356, 364, 489 S.E.2d 738, 746 (1997).

[14] 159 W. Va. 482, 223 S.E.2d 780 (1976).

[15] *Id*. at 496-97, 223 S.E.2d at 789-90.

10

In *Louk*, we relied on *Morrissey v. Brewer*[16] and *Gagnon v. Scarpelli*,[17] where the Supreme Court of the United States established that individuals with conditional freedom privileges—parolees and probationers—are entitled to due process when faced with revocation of their freedom. It also recognized the State's "overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole."[18] Parole revocation is a two-step process; "[t]he first stage occurs when the parolee is arrested and detained, usually at the direction of his parole officer.[19] The second occurs when parole is formally revoked."[20]

---

[16] 408 U.S. 471 (1972).

[17] 411 U.S. 778 (1973).

[18] *Morrissey*, 408 U.S. at 483.

[19] *See Morrissey*, 408 U.S. at 485 ("Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions."); *see also* W. Va. Code § 62-12-10 ("(a) If at any time during the period of probation there shall be reasonable cause to believe that the probationer has violated any of the conditions of his or her probation, the probation officer may arrest him or her with or without an order or warrant, or the court which placed him or her on probation, or the judge thereof in vacation, may issue an order for his or her arrest, whereupon he or she shall be brought before the court, or the judge thereof in vacation, for a prompt and summary hearing.").

[20] *Morrissey*, 408 U.S. at 471 (footnote added); *see* W. Va. Code § 62-12-10(a)(1) and (2), discussed *infra*.

In *Morrissey*, the Supreme Court mandated a hearing "prior to the final decision on revocation by the parole authority," if the parolee desires such a hearing. [21] While declining to "write a code of procedure" for parole revocation hearings, the Supreme Court specified minimum requirements of due process.[22] This Court adopted the same procedural due process protections in *Louk*.[23] For instance, due process provides a parolee or probationer the right to be heard, present witnesses, and cross-examine the State's witnesses at the final revocation hearing.

When addressing the standard of proof, *Morrissey* instructs that the final revocation hearing

> must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions,

---

[21] *Morrissey*, 408 U.S. at 488.

[22] *Id.*

[23] *See* Syl. Pt. 12, *Louk*, 159 W. Va. 482, 223 S.E.2d 780 ("The final revocation proceeding required by the due process clause of the Fourteenth Amendment and necessitated by W. Va. Code, 62-12-10, as amended, must accord an accused with the following requisite minimal procedural protections: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a 'neutral and detached' hearing officer; (6) a written statement by the fact-finders as to the evidence relied upon and reasons for revocation of probation.").

12

or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.[24]

The primary issue in this appeal—the standard of proof for a final parole revocation hearing—is an important procedural safeguard. "The function of a standard of proof . . . is to instruct the factfinder concerning the degree of confidence . . . he should have in the correctness of factual conclusions for a particular type of adjudication," indicating "the relative importance attached to the ultimate decision."[25]

Before our detailed examination of the statute at issue, it is helpful to review the continuum of burdens of evidentiary proof and the procedural standards implicated. In criminal cases, the demanding standard of proof beyond a reasonable doubt applies because a person who is presumed to be innocent is facing total loss of liberty.[26] In contrast, the clear and convincing evidence standard is required in exceptional civil cases, such as a court order limiting or terminating parental rights to the custody of minor children,[27] or

---

[24] *Morrissey*, 408 U.S. at 488.

[25] *Addington v. Texas*, 441 U.S. 418, 423 (1979) (internal quotation marks and citations omitted).

[26] *Id*.

[27] Syl. Pt. 6, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.").

taking private property by adverse possession.[28]  Less demanding than that is proof by a preponderance of the evidence, the general standard used in civil cases,[29] which means "more likely than not."[30]  Finally, the probable cause standard requires even less than a preponderance of the evidence standard.  In the context of an arrest, we have explained that probable cause exists when the facts within the knowledge of the arresting officer are "sufficient to warrant a prudent man in believing that an offense has been committed."[31]  With this background to guide our analysis, we proceed to Mr. Foye's assignments of error.

## C.  Conditional-freedom Privilege Revocation Under W. Va. Code § 62-12-10(a)(1)

Mr. Foye first argues that the circuit court did not apply the correct burden of proof and so violated his procedural due process rights at the parole revocation hearing.  Relying on *Sigman*, Mr. Foye claims the circuit court should have applied a "clear preponderance of evidence" standard.[32]  The State responds that the court applied the correct standard—the "reasonable cause" standard set forth in West Virginia Code § 62-

---

[28] Syl. Pt. 2, *Brown v. Gobble*, 196 W. Va. 559, 474 S.E.2d 489 (1996) ("The burden is upon the party who claims title by adverse possession to prove by clear and convincing evidence all elements essential to such title.").

[29] *Lutz v. Orinick*, 184 W. Va. 531, 534, 401 S.E.2d 464, 467 (1990).

[30] *Jackson v. State Farm Mut. Auto. Ins. Co.*, 215 W. Va. 634, 640, 600 S.E.2d 346, 352 (2004).

[31] *In re Moss*, 170 W. Va. 543, 547-48, 295 S.E.2d 33, 38 (1982).

[32] *See supra* note 7.  Mr. Foye complains that the circuit court applied the wrong burden of proof at the hearing and in its order.

14

12-10(a)(1), the statute that governs final revocation hearings. The State goes on to explain that prior to 2013, there was no burden of proof specified in the statute, so this Court filled the gap in *Sigman* by holding that a clear preponderance of the evidence standard applied. But in 2013, the Legislature amended West Virginia Code § 62-12-10(a) to include the reasonable cause standard, providing, in relevant part, that:

> (1) If the court or judge finds reasonable cause exists to believe that the probationer:
>
> (A) Absconded supervision;
>
> (B) Engaged in new criminal conduct other than a minor traffic violation or simple possession of a controlled substance; or
>
> (C) Violated a special condition of probation designed either to protect the public or a victim; the court or judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed and order that sentence be executed.

Section 62-12-10 does not define "reasonable cause," and the parties have cited no case law from any other jurisdiction that applies or explains what a reasonable cause evidentiary standard means in this context. Courts generally do not use reasonable cause as a standard of proof at an evidentiary hearing. Rather, the Legislature has used this phrase as a standard that triggers State action. For example, in *State v. Dunbar*,[33] we discussed the language of West Virginia Code § 17C-16-2(a) (2009), which authorizes the

---

[33] 229 W. Va. 293, 728 S.E.2d 539 (2012).

15

West Virginia State Police to make traffic stops when there is "reasonable cause to believe that a vehicle is unsafe or not equipped as required by law[.]"[34] And at the first step of a parole or probation revocation process, a probation officer may make an arrest, with or without a warrant, when there is "reasonable cause to believe that the probationer has violated any of the conditions of his probation."[35] At oral argument, the State asserted that reasonable cause is akin to a probable cause standard. On the other hand, Mr. Foye maintains that reasonable cause is not a constitutionally adequate burden of proof under *Morrisey*. He urges us to reject the standard set forth in § 62-12-10(a)(1) as unconstitutional and return to the clear preponderance of evidence standard under *Sigman*.

When a question of a statute's constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear. We have held that:

> "In considering the constitutionality of a legislative enactment, courts must exercise due restraint, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act

---

[34] W. Va. Code § 17C-16-2(a)

[35] W. Va. Code § 62-12-10(a).

16

of the legislature, the negation of legislative power must appear beyond all reasonable doubt."[36]

As discussed above, minimal constitutional due process requirements are met when the process provides adequate safeguards to the parolee confronted by an action against him by the State. While Mr. Foye's liberty interest in avoiding incarceration is constitutionally significant, it is a conditional one. The standard of proof in a final parole revocation hearing must "insure that his liberty interest is not unjustifiably taken away," while also serving the State's important interest in not "imprudently prejudicing the safety of the community."[37] For this reason, we reject the State's contention that the reasonable cause standard should be viewed as a probable cause standard in this context because *Morrissey* states that the final hearing "must be the basis for more than determining probable cause[.]"[38] But we also reject Mr. Foye's request to negate the statute and apply *Sigman* because it has been superseded by statute.

To resolve the issue of what standard of proof applies at the final parole revocation hearing, we begin with an examination of West Virginia Code § 62-12-10(a)(1).

---

[36] Syl. Pt. 3, *State v. Legg*, 207 W. Va. 686, 536 S.E.2d 110 (2000) (quoting Syl. Pt. 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965)).

[37] *Gagnon*, 411 U.S. at 785.

[38] *Morrissey*, 408 U.S. at 488. We acknowledge that the reasonable cause standard at the first step of the revocation process—when a probationer is arrested and detained—could be viewed as a probable cause standard consistent with *Morrissey*. *See supra* note 19.

17

As a matter of course, we apply a presumption that the Legislature intended the 2013 amendments to the revocation statute to be read commensurate with the body of law surrounding the standard for probation revocation hearings because, in enacting a statute, we presume that "the legislators who drafted and passed it were familiar with all existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof."[39]  In accordance with that rule, this Court must presume that when the Legislature amended West Virginia Code § 62-12-10(a)(1) in 2013, the legislators were familiar with the clear preponderance of evidence standard articulated in *Sigman*, yet specifically chose not to use that standard.  At the same time, we presume that they were familiar with the constitutional principles set forth in *Morrissey* that require a higher standard of proof than probable cause and intended the statute to harmonize completely with them.

Because due process requires that the final evidentiary hearing be the basis for more than determining probable cause, and we presume that West Virginia Code § 62-12-10(a) is not contrary to any constitutional right, we construe § 62-12-10(a)(1)'s "reasonable cause" requirement to mean proof by a simple preponderance of the evidence. The application of the preponderance of the evidence standard appropriately protects the

[39] Syl. Pt. 4, in part, *Davis Mem'l Hosp. v. W. Va. State Tax Comm'r*, 222 W. Va. 677, 671 S.E.2d 682 (2008).

18

interests of both the State and the offender. For this reason, many state courts[40] and federal courts[41] apply that standard of proof in final parole and probation revocation hearings. We hereby hold that the standard required for a final parole or probation revocation hearing under West Virginia Code § 62-12-10(a)(1) (2013) is proof by a preponderance of the evidence.

## D. Sufficiency of Evidence of Parole Violations

Mr. Foye next contends that the circuit court erred when it concluded that the State presented sufficient evidence to demonstrate that he violated the terms of his parole. The State responds that the evidence shows that Mr. Foye was charged with the murder of

---

[40] *See, e.g.*, *Jones v. Bailey*, 576 S.W.3d 128, 147 (Ky. 2019) ("as with probation revocation, the standard of proof required to establish a conditional-freedom violation is preponderance of the evidence."); *State ex rel. Flowers v. Dep't of Health & Soc. Servs.*, 260 N.W.2d 727, 734 (Wis. 1978) ("In our opinion, the preponderance of evidence standard of proof is the proper standard to use in parole and probation revocation cases."); *People v. Smith*, 245 N.E.2d 13, 15 (Ill.App.2d 1969) ("to revoke probation guilt need merely be shown by a preponderance of the evidence."); *State v. Fisher*, 522 P.2d 560, 562 (Ariz.App. 1974) ("The civil standard of proof by a preponderance of the evidence is all that is required to revoke probation."); *State v. Hughes*, 200 N.W.2d 559, 563 (Iowa 1972) (stating the requisite degree of proof at a probation revocation hearing is preponderance of the evidence).

[41] *See, e.g.*, *United States v. Perkins*, 67 F.4th 583, 615 (4th Cir. 2023) (recognizing that preponderance of the evidence standard applies to probation revocation); *United States v. Teran*, 98 F.3d 831, 836 (5th Cir. 1996) ("The revoking court must base a finding of a probation violation on a preponderance of the evidence."); *United States v. Smith*, 767 F.2d 521, 523-24 (8th Cir. 1985) ("[T]he standard of proof required for probation revocation is only a preponderance of the evidence[.]"); *United States v. Lyons*, 312 F. App'x 133, 134 (10th Cir. 2009) (affirming district court's finding that, by a preponderance of the evidence, the defendant violated probation).

19

Mr. Johnson, violated a no-contact provision of his parole, and violated a no-illegal-drug use provision of his parole.

We recognize that parole revocation hearings are not connected with retribution. Parole and probation are intended to foster the reintegration of the individual into society at the earliest opportunity. [42] So, "[t]he ultimate question in revocation proceedings is whether the parolee remains a 'good risk'; whether his rehabilitation can be successfully achieved outside prison walls or will be furthered by returning him to a closed society."[43] To this end, the final revocation hearing is flexible, and because the West Virginia Rules of Evidence do not apply at parole or probation revocation hearings,[44] a court may consider evidence including letters, affidavits, and other material that would not be admissible in a criminal trial.[45] While hearsay evidence is admissible, there must be some corroboration and basis for believing the hearsay to be reliable.[46] "The law has been

---

[42] *Gagnon*, 411 U.S. at 783.

[43] *State ex rel. Flowers*, 260 N.W.2d at 732.

[44] W. Va. R. Evid. 1101.

[45] *Morrissey*, 408 U.S., at 489 ("[T]he process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial").

[46] In *Crawford v. Jackson*, 323 F.3d 123, 128 (D.C. Cir. 2003), the court stated that "[r]eliance on hearsay in parole revocation hearings is not per se impermissible." But, "the use of unsubstantiated or unreliable hearsay would certainly eviscerate the safeguards guaranteed by *Morrissey* and *Gagnon*." *Id.* (internal quotation marks and ellipses omitted)).

summarized as holding: 'Although a revocation of probation may not be based on hearsay evidence alone, a revocation of probation will stand even though hearsay evidence was introduced at a hearing, provided there was additional competent evidence sufficient to support the revocation.'"[47]

In this case, the State presented unrebutted evidence that Mr. Foye committed two parole violations when he had contact with a disreputable person, his co-defendant in the murder case, Mr. Hawk, and engaged in illegal marijuana use. Mr. Foye did not contest these parole violations; in fact, his counsel conceded that "we'll accept those violations [with the] understanding that they can lead to revocation." While Mr. Foye now argues that those were "technical violations" that should have been resolved by graduated jail sanctions,[48] he did not argue that below. Because Mr. Foye did not preserve this challenge for appellate review, that issue is not properly before this Court, and we decline to address it here.[49]

---

[47] *State v. Stuckey*, 174 W. Va. 236, 239, 324 S.E.2d 379, 381-82 (1984) (citing 21 Am.Jur.2d *Criminal Law* § 579 (1981)); *see, e.g., Ash v. Reilly*, 433 F. Supp. 2d 37, 44 (D.D.C. 2006) ("Thus, when hearsay is used to support a decision to revoke parole, there must be some independent basis for believing the hearsay to be true.").

[48] *See* W. Va. Code § 62-12-10(a)(2).

[49] *See* Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.").

The remainder of Mr. Foye's attack on the sufficiency of the evidence is his contention that the evidence connecting him to the murder of Mr. Johnson was based on nothing but hearsay. We disagree. Although Detective Adkins relied on statements from a confidential informant who was allegedly at the scene of the murder, he corroborated that information during his investigation by reviewing Mr. Foye's cell phone records and video footage of the area surrounding the scene around the time when Mr. Johnson was shot and killed. He explained that Mr. Foye's cell phone data showed that he was in Huntington at the time. Detective Adkins testified that he located a vehicle involved in the murder and determined that Mr. Foye was using that vehicle. The State also presented evidence that Mr. Foye was charged with the murder of Mr. Johnson in Cabell County, and that the magistrate court found probable cause to bind the case over to the grand jury.

Rather than focusing on whether certain pieces of evidence would be admissible at a criminal trial, courts reviewing revocation decisions "are properly more concerned with whether the evidence considered as a whole, including the hearsay evidence, was both sufficient in quantity and reliability to ensure fundamental due process rights."[50] Considering the record before us, we readily conclude that the State proved, by a preponderance of the evidence, that Mr. Foye committed three parole violations. So, the circuit court did not abuse its discretion when revoking his parole.

---

[50] *Crawford*, 323 F.3d at 128.

## IV.  CONCLUSION

For the reasons set out above, we affirm the March 2, 2023, order of the Circuit Court of Kanawha County.

Affirmed.